## Low's case.

Grand jurors may be examined as witnesses, in court to the question whether twelve of the panel actually concurred, or not, in the finding of a bill of indictment ; under *art. 1, sec. 7,* of the Constitution of Maine.

If an indictment is found without the concurrence of twelve of the grand jury, this may be shewn to the court by motion in writing, in the nature of a plea in abatement, made at the time when the defendant is arraigned.

An indictment was found at the last *April* term in this county, against this defendant, for the alleged forgery of a deed. At the last *September* term, being brought in to plead to the indictment, he filed a motion in writing under oath, in these words :—" And now the said *John Low* comes into court, and alleges that he ought not to be holden to answer to this indictment, because he

says that the said indictment was not found by any twelve of the grand jury ; but simply by a majority of the number who constituted the grand jury panel, at the court at which said bill purports to be found. And he now moves the court for liberty to prove these facts by the testimony of *James Gray*, foreman of the grand jury who returned said bill into court ; and by Col. *Thomas W. Shannon*, *Joseph Frost*, Esq. *John S. Foss* and *Miles Ford*, who were grand jurors on the panel aforesaid, and who are now here present in court ; and that said bill was so returned under a mistaken idea that it was only necessary that a majority of the panel should agree to a bill of indictment." The affidavits of the grand jurors named in the motion being taken *de bene esse*, they all testified that their impression was, that it was sufficient if a majority of the grand jury concurred in the finding of a bill, though the number composing the majority was less than twelve. The foreman and two others stated that in the present case the number of grand jurors so concurring was less than twelve. One of the others testified that such was his impression, but that he did not feel certain of the fact ; and the other said that he did not know whether there were or were not twelve who concurred in finding the bill. The motion was then ordered to stand over for argument at this term.

*E. Shepley*, in support of the motion, founded his argument on the constitution of Maine, *Art.* 1 sec. 7, which provides that the usual number and the unanimity of jurors, in indictments as well as convictions, shall be held indispensable. The constitution having secured this right to the consent of twelve men in the finding of every indictment, it must be understood as securing also, to the party interested, the means of proving the fact ; and this can be known only by the evidence of the grand jurors themselves, since no other person is presumed to be present at their deliberations.

If the court are judicially informed, in any mode, of the want of such concurrence, it is their duty to quash the indictment. 2 *Hawk. P. C.* 307. *Commonwealth v. Smith* 9 *Mass.* 107. *United States v. Coolidge* 2 *Gal.* 367.

Low's case.

And the motion violates no principle of law. Certainly not the oath of the grand juror ; which relates only to the opinions, remarks and counsel both of the attorney general, his fellows and himself, upon any particular case before them ; but not to extrinsic facts. Thus, if a witness swears before the traverse jury, contrary to what he swore before the grand jury, this fact may be proved by the testimony of a grand juror. 1 *Chitty's Crim. law* 260   2 *Bl. Com.* 126, *note* 5.   So in case for a malicious prosecution. 3 *Selw. N. P.* 945.   *Thompson v. Mussey* 3 *Greenl.* 305.   Grand jurors are members of the court, and their testimony is within its legal control. It is enough for the citizen to suggest to the court his grief, resulting from the misprision or improper conduct of its officers ; and the court will inquire into it. 12 *Co.* 93.   3 *Inst.* 33.   Nor does it contradict the record ; for it is not stated on record that twelve jurors did concur. And the rule that the record is not to be contradicted, relates only to formal pleas ; not to a motion or suggestion like the present ; which may be made at any time before verdict, and is the proper mode of bringing the fact to the knowledge of the court. 4 *Com. Dig.* 334.   *Indictment A.*   9 *Mass.* 109, 110. 2 *Pick.* 563.   If the constitution, in giving the right, is not to be understood as having also secured ample and sufficient means for its assertion ; the boasted constitutional privilege sinks into a mere mockery of the citizen with the semblance of protection ; and the barriers raised by that charter, to preserve his liberty and insure his safety, will be found to be but the shadows of defence.

*The Attorney General* objected to the call of any grand juror, to disclose the views or opinions of the grand inquest, directly or indirectly, for any of the purposes proposed.

1. Because it is against public policy. It has a direct tendency to bring their opinions and deliberations into public discussion. It exposes them to the malice or the favor of the accused; to the influence of fear, favor, affection and hope of reward; and places them in a situation destructive to the independence of

that important tribunal. Nor is it necessary that this inquiry should be opened. To an innocent man, it is of no utility, since he can always vindicate himself, in a trial upon the merits.

2. It is against immemorial usage, and against law. No case can be found in which such testimony has been resorted to ; and the total silence of the books on a point which, if grand jurors could be called at the pleasure of the defendant, might have been made, many times, and for centuries, is proof that no such usage or practice ever existed. It violates law, in that it renders public that which is by law a sacred deposit in the breast of the grand juror. With so much jealousy was this principle guarded by the law, that if one of the grand jury disclosed the evidence, he became an accessory, in felony, and a principal in treason. 4 *Bl. Com.* 126. 2 *Hawk. P. C.* ch. 46, sec. 93. 1. *Chitty's Crim. law* 496.

It is not the best evidence of the fact sought after. The record is the only testimony to be resorted to ; and it is not to be contradicted by parol. It states that the grand jurors, on their oath, present such an offence ; which plainly imports that at least twelve concurred in finding the bill, and is conclusive evidence of the fact. It cannot be avoided or contradicted by plea. *Commonwealth v. Smith* 9 *Mass.* 110. Even traverse jurors can be received only to explain and support their verdict ; never to contradict it. *Grinnell v. Phillips* 1 *Mass.* 543. No juror, grand or traverse, can be heard, in proof of his own misconduct, or that of his fellows ; not even to say that he assented to the verdict merely because a majority were of that opinion, believing he was bound by law so to do. *Commonwealth v. Drew* 4 *Mass.* 399. *Jackson v. Williamson* 2 *D. & E.* 281. *Davis v. Tucker* 4 *Johns.* 487. *Haskell v. Becket* 3 *Greenl.* 92. *Taylor v. Greely ib.* 204.

If the facts stated in the motion were thrown into the form of a plea, it must be either in bar or abatement ; to which the regular answer would be that the indictment was returned by a full panel, *prout patet per recordum.* And this must be tried solely by inspection of the record itself. 1 *Inst.* 117, 260. 6 *Co.* 53. 3 *Bl. Com.* 331. There could be no issue of *nul tiel record*, it being a criminal case. *Hale's P. C.* 241, 243, 255. *Starkie's*

Low's case.

*Crim. Plead.* 359. And any other mode of trying it would vitiate the plea. 9 *Co.* 25. *Binney v. Merchant* 6 *Mass.* 192. As the motion seeks another mode of trial, it is bad.

The cases cited on the other side support, rather than impugn, these positions. In *Sykes v. Dunbar* 3 *Selw.* 1064, *Ld. Kenyon* said that after the criminal trial, the right to withhold the testimony of the grand juror might be waived by the crown, in order to prove perjury in the witness. But it is admitted in no other case. In *United States v. Coolidge* no grand juror was examined ; but a witness was called who had been before them. In *Thompson v. Mussey* the witness was the county attorney; and he was called to prove an independent fact ; not to contradict a record.

*Daveis*, in reply, said that the object of the motion was not to contradict a record ; but to ascertain whether the paper purporting to be a record was entitled to that character. The objection is, that it is not what it purports to be; and the argument on the other side assumes the very point in dispute, being founded on the supposition that the paper is a record.

The English practice is to express in the caption of the indictment that it was found by twelve grand jurors. Thus the finding by twelve becomes matter of record, and therefore cannot be contradicted. But in our courts the practice is otherwise ; the caption only saying "the jurors of the State aforesaid," without stating any number. The presumption is, that it was the legal number ; but this presumption, like any other, may be rebutted by contrary proof.

After this argument the *Attorney General* moved for leave to take the affidavits of others of the same grand jury, *de bene esse*, to the same point ; which was granted.

The counsel for the defendant then moved for leave to ask each grand juror whether any person, other than the grand jurors, was present when they deliberated on finding the indictment. But the court refused to put the interrogatory, because this point was not a subject of the original motion ; and they would not receive a motion now for that purpose, until the other was disposed of.

The judges afterwards delivered their opinions, as follows.

WESTON J. In the case before us, no objection was made to the indictment at the term in which it was found. The party accused has not been recognized to appear at that term ; nor was he required to answer, nor did he appear, until the succeeding term. He then made the motion, now under consideration, to the presiding judge, who received the affidavits of the foreman and of four other jurors, *de bene esse*, and ordered the continuance of the indictment and of the motion, that it might be determined by the whole court. The preliminary question now presented is, whether the court will so far sustain the motion, as to go into an examination of the facts, upon which it is founded.

The concurrence of twelve grand jurors is necessary to find a bill. The party accused cannot be legally held to answer, upon the finding of a less number. And this privilege is secured to the citizen, in crimes capital or infamous, by the provisions of the constitution. These positions are not denied; but it is insisted that, when an indictment is once verified by the attestation of the foreman of the grand jury that it is a true bill, and as such been presented to the court, and ordered to be put on file, it then becomes a matter of record ; and furnishes conclusive and incontrovertible evidence, that it was found by the requisite number. I am satisfied that an indictment, thus sanctioned, is to be regarded as a record, and that it has all the legal verity which belongs to that species of evidence; and I admit that according to our practice, it proves the fact that twelve or more agreed to the bill. I think the certificate of the foreman must be necessarily understood as implying this, and as constituting the proper evidence of the fact ; it not here appearing in the caption that it was found by twelve men, according to the usage in England. But while I recognize the absolute certainty, which a regular judicial record carries with it, and the policy upon which it is founded, I am also of opinion that there is, and always has been, and from the necessity of the case must be, a power in the court to vacate, or to cause to be amended, a record which has been erroneously or falsely made, by inadvertency or otherwise, by any of its officers. I entertain no doubt that the court may exercise

this power at any time, according to their discretion ; but unquestionably while a criminal prosecution, or a civil suit, is yet in progress, and has not finally terminated. It is not to be understood that the rights of parties are to be concluded, and that without remedy, by the errors and mistakes, to say nothing of the fraud, of a recording officer. To subject a record to the superintending and revising inspection of the court, is not to impair the rule of evidence under consideration. That there may be an end of controversy in regard to facts, the truth of which has been established in judicial proceedings, no averment or proof is received against a record ; but it is competent for the court to say, if they are satisfied that the claims of justice require it at their hands, this is not our record ; it is false and erroneous; and the authentication which it bears is unauthorized and unwarranted.

The return of the sheriff, upon mesne or final process, has the character of a record ; and as such is incontrovertible ; and yet it is no uncommon practice for the court, in their discretion, to permit him to amend it. And upon the suggestion of the clerk that an error has crept into the record, through the inadvertency either of himself or his substitutes, the court, being satisfied of the truth of the suggestion, do not hesitate to order its amendment.

It is well known that in our practice, when the grand jury come into court, upon being inquired of whether they have agreed in any bills, and the foreman answering in the affirmative, he is directed to hand them in; whereupon they pass from his hands, through the intervention of an officer, to the clerk. They are not read over, nor is the substance of them stated, or the persons named against whom they are found. It is taken for granted that the foreman returns only such as the requisite number have concurred in ; but no inquiry is made of his fellows, nor is it made known to them at the time what bills are passed over to the court. Let it be supposed that after they have been received, and ordered to be filed, and the grand jury discharged, it should happen to be suggested to them that, among the number, is one charging a certain citizen with a certain crime. If therefore every juror, except the foreman, should present himself and

Low's case.

offer his affidavit that he never agreed to such a bill, is there no power in the court to receive such testimony, and if assured of its truth, to give relief? Or if the foreman, after the grand jury has been dismissed, discovering his mistake, should suggest to the court, and offer to support his statement by oath, and by the corroborating testimony of every member of the jury, that the Attorney General had drawn two bills against a party accused, one for murder and one for manslaughter, and had left them with the jury, that they might make use of one or the other, as they might find the facts ; that a competent number of them had agreed in the bill for manslaughter ; but that he had since discovered that he had inadvertently signed and presented as true the bill for murder, to which they had not agreed ; is the judicial power so defective, that this error must remain without correction ? If so, the life of a citizen may be brought into jeopardy, in violation of both his legal and constitutional rights, under the pretence of a necessary adherence to the letter of a technical rule.

It may be said that to permit an inquiry of this sort, would open the door to great abuses ; that it would afford opportunity to tamper with the jury ; and that it would lessen the respect due to the forms and solemnities of judicial proceedings. These are considerations, which address themselves strongly to the attention of the court : and cannot fail to have a deep influence, in the exercise of their discretion. It could only be in a very clear case ; where it could be made to appear manifestly and beyond every reasonable doubt, that an indictment, apparently legal and formal, had not in fact the sanctions which the law and the constitution require, that the court would sustain a motion to quash or dismiss it, upon a suggestion of this kind.

The oath of the grand juror requires him to keep secret the State's counsel, his fellows', and his own. Of this character may be, what particular jurors agreed or dissented, upon the questions whether a true bill or not ; and also the testimony exhibited before them ; or such parts of it as the Attorney General may wish to keep secret, until developed at the trial. But the fact, whether twelve or more concurred or not in the bill, is not a

secret. It is a result which they are required, through their organ the foreman, to make known ; and it is of the deepest importance to the public and to the accused, that it should be truly disclosed.

There might have been less difficulty in supporting this motion, if it had been made at the first term, when the facts were fresh in the recollection of the jury ; but their mistake, it is stated, had not then been discovered ; and the party charged was not before the court. It is understood that the foreman, who signed this bill, happening to be present at the succeeding term, was, from the charge of the judge to the grand jury, apprised that a bill could be found only by twelve or more ; whereas he had before supposed that a majority was sufficient. Finding that his mistake had operated to the prejudice of *Low*, the defendant, he disclosed the fact ; and he now states in his affidavit, if it can be received, that although a majority of the jury agreed in finding the bill, that majority did not consist of twelve. If the mistake had been discovered before the discharge of the grand jury, better and more satisfactory means of ascertaining it would have been afforded. But it appears to me that the door to further inquiry is not therefore necessarily closed ; and that this presents a case, in which the superintending power of the court, in correcting any mistakes which may arise in its proceedings, may and ought to be exercised ; and that the testimony offered in support of the motion, together with any counter evidence, which may be adduced on the part of the State, ought to be received.

The conclusion to which I have arrived is not, I apprehend, without authority. In 2 *Hawk*. 307, cited in the argument, it is stated that if it appear, from the caption, or otherwise, that less than twelve jurors agreed in the indictment, it must be quashed. In the *Commonwealth v. Smith*, also cited, *Sewall J.* who delivered the opinion of the court, adverting to the principle that indictments, not found by twelve good and lawful men, are void and erroneous at common law, says, "an irregularity in this respect, if it should happen, might become a subject of inquiry, upon a suggestion to the court." This position is not inconsistent with

what he afterwards states, that no averment to this effect can be admitted by a formal plea. No averment by way of plea can be received against a record; but the court may determine, upon suggestion, whether that, which is apparently a record, is in truth entitled to that character. The judge further intimates that objections to the personal qualifications of the jurors, or to the legality of the returns, are to be made before the indictment is found. In the *Commonwealth v. Parker* 2 *Pick.* 563, the court do not appear to approve of this limitation, stating that " there is a difficulty in the case ; for a bill may be found against a person, who has not been recognized to appear, and who has no opportunity to challenge." But after the grand jury is returned and impanelled, the question whether an indictment, presented to the court as a true bill, was assented to by twelve or more, is in its nature subsequent to any which may be raised, as to their personal qualifications.

PREBLE J. Among the indictments presented at a previous term, to this court, in behalf of the grand jury, by their foreman, was found a bill, purporting to be an indictment in due form of law, against the defendant, for forgery. A capias issued as of course, returnable at the next term; and the defendant, having been arrested by the sheriff in vacation, appeared at the next term, to abide the order of the court in the premises. On being called, for the purpose of being arraigned, he prayed that he might not be held to answer for the crime charged, nor be put upon trial on the bill read to him, suggesting to the court, in writing, that no twelve of the grand jurors concurred in finding the bill, laid before them by the Attorney General, to be a true one; and therefore, that no indictment had ever, in truth, been found by the grand jury against him, and that the foreman of the grand jury had certified the bill, as a true bill, through mistake of law. This suggestion the defendant verified by his own affidavit, and further offered to prove the facts suggested, by the foreman, who certified the bill, and by several of the grand jurors, his fellows, then present in court. The defendant therefore made his suggestion, and prayed the court to inquire into the facts, at the first moment he had an

Low's case.

opportunity to be heard in court, and he made it in the most solemn form, accompanied by a tender of the most certain, direct, and ready means of ascertaining the truth of the facts suggested by him. No laches therefore are imputable to him. He has lost no right by neglecting to avail himself of it in due season. And we are called upon to decide the present preliminary question, on the assumption that the facts suggested by the defendant disclose the true interior state of the case.

It is provided in the bill or declaration of rights, that " no person shall be held to answer for a capital or infamous crime, unless on presentment or indictment of a grand jury," except in certain specified cases, among which the case at bar is not one. By immemorial usage, and the well known principles of the common law, no presentment can be made, or bill of indictment be found by a grand jury, unless twelve at least of their number concur in so doing. These principles were deemed so *important to the security of the citizen*, that, to preserve them inviolable from the spirit of innovation and encroachment, they were ingrafted from the common law into our constitution. Here we find it expressly ordained that in regard to juries, " their usual number and unanimity, in indictments and convictions, shall be held indispensable." And in this connexion, I may take occasion to remark, it is the boast of the common law, that for every violation or infringement of a right, recognized by law, there is a certain and effectual remedy, or mode of enforcing that right, provided, if not by special enactment of the legislature, by the very genius of the common law itself. Here too I may observe that while in the process, forms of action, declarations, and pleadings, in civil suits, the law is incumbered with technicalities, and rendered complex and unintelligible to all who have not made it an object of special study ; in criminal prosecutions, so far as the accused is concerned, the proceedings are free from intricacy, and partake of the most simple and intelligible character. On the other hand, the precision and nicety required to be observed on the part of the prosecution, are so many guards and defences interposed to protect and pres-

erve the accused. Even matters of form become, in an indict-
ment, matters of substance, in his behalf. So also the principles
adopted by the courts of law, in regard to the course of proceed-
ings in criminal cases, and the effect of those proceedings, were
never intended or understood to debar the accused from assert-
ing his rights, but to give him full opportunity to vindicate and
maintain them. Now according to these principles, admitting
the fact to be as suggested by the defendant, there ought to be
a time, and mode, in which he may avail himself of the objection,
and claim his constitutional right not to be held to answer. It
seems to be clear, as well on principle as on authority, that the
objection cannot be taken by way of formal plea. The very
nature of the objection is prior in order to that of a plea; for
it is an objection to being held to answer or plead in any form.
It goes not to the abating or answering of the indictment, but to
its annihilation; to the denying that it ever had legal existence.
If therefore, the objection can be made at all, the course which
the defendant has adopted seems to be the proper one.

According to the English practice, it is necessary to state in
the caption of every indictment, that it was found on the oath of
twelve men. But the caption of an indictment is no part of the
indictment itself, and the facts recited in the caption are no part
of the finding of the grand jury. Hence, in certain cases, the
caption may be amended, under the authority and sanction of the
court, and made agreeable to the truth of the case. 1 *Saund.* 248
*in note*; 249, *note* 1. Hence also, according to the authority cited
in argument from *Hawk. book* 2, *chap.* 25, *sec.* 16, if it appear
by the caption, or otherwise, that less than twelve concurred in
the finding, the indictment is erroneous. The grand jury and
their proceedings, are under the general superintendence of the
court; and the court will institute inquiries, where necessary to
protect the rights of the citizen. Irregular and illegal proceed-
ings, in important particulars, will vitiate their findings. *United
States v. Coolidge* 2 *Gal.* 364. *Commonwealth v. Smith* 9 *Mass.*
107. It seems to me, therefore, to be alike at variance with
the constitutional right of the citizen, and the principles of the
common law, with the general course of proceeding in criminal

trials, with analogous cases, and with the general superintending power and duty of the court, that the court should be solemnly made acquainted with the fact, that through mistake of the law, ignorance of his duty, or malicious design, the foreman of the grand jury had certified and delivered into court a bill, as a true bill, which had never been found by the jury, and yet the court not have power to institute any inquiry into the subject, nor to interfere and arrest the evil, and prevent further wrong. Our practice, in regard to the form of captions, and to the mode of delivering indictments into court, differs in some respects from that which obtains in England; but it was from an enlarged view of the whole subject, as I apprehend, as well as from analogy to the rules and principles adopted by the English courts, that Mr. Justice *Sewall,* that eminent lawyer and most excellent judge, was led to remark, in *Commonwealth v. Smith,* " an irregularity in this respect, if it should happen," (namely that of an indictment not found by twelve men,) " might become a subject of inquiry upon a suggestion to the court."

But there is a view of this subject, already alluded to, which is in a manner peculiar to our own State. In construing constitutional provisions, courts have, for the purpose of carrying into effect the intent of the people, as expressed in their constitution, considered those provisions, where they are not manifestly merely directory, as operating by their own proper power, independent of legislative enactments. And of such paramount authority are these provisions, that even an act of the legislature, contravening them, is void. If therefore, there had been any more technical rule of the common law in existence, prior to the adoption of our constitution, which inhibited the court from looking into the true interior state of the facts in such a case, as the defendant had suggested to us, our constitutional provision, that in regard to juries "the usual unanimity in indictments shall be held indispensable," would so far modify that rule, as not only to justify but to render it the duty of the court, to take the necessary measures to see that the constitution itself was not violated, by holding a person to answer for an infamous crime, on indictment of less than twelve good and lawful men of

the grand jury. Such a rule is inconsistent with these provis-ions of the constitution. For, if it could still exist, unmodified, and in its full extent, it would render these provisions merely directory, and that not to the courts, but to the grand juries. And should a grand jury disregard the direction, there would be neither prevention, nor adequate remedy, for the party aggrieved.

But I am satisfied that no such rule, precluding all inquiry into the true state of the facts, does exist at common law. The reasons already assigned afford a strong presumption against the existence of any such rule. The authority of *Sewall J.* that inqui-ry may be made, is directly in point; and that of *Hawkins* seems equally clear. All the authorities concur, that unless twelve good and lawful men of the grand jury do agree in finding the bill, the indictment is void and erroneous. Now every grand jury consists of twelve men, at least; and according to our prac-tice it never does appear whether a greater or less number con-curred in finding the bill, because there is no reference to the number in the caption. That twelve did concur, is matter of inference merely, from the fact that the bill is regularly signed by the foreman, and delivered into court in the usual manner. Now for courts to be solemnly resolving, and legal writers of the first eminence to be gravely stating as matter of settled law, that if twelve at least of the grand jury do not concur in finding the bill, the indictment is void and erroneous, seems to me to be very idle, to say the least of it, if the party interested is not permitted to suggest the fact, and the court are precluded from inquiry into the subject, or allowing the party to avail himself of the error. I would borrow the language of Lord *Mansfield*, in *Rex v. Atkinson*, changing what should be changed ;—"courts have invariably proceeded on the same idea, as a fundamental rule, that a fiction of law shall never prevail against the truth of the fact, to defeat the ends of justice." Besides, there is something so purely artificial in the reasoning urged in support of the rule contended for, and something so seriously repugnant to the plain unsophiscated sense and perception of things, in the doc-trine, that I could not bring my mind to acquiesce in the princi-ple, but in submission to the most clear and unquestionable

Low's case.

authority. I concur with my brother therefore in the opinion that it is competent for the court to go into the inquiry, as prayed for by the defendant.

The question already disposed of, involves in itself the principal difficulty. The objection that admitting the inquiry may be instituted, the grand jurors cannot be permitted to testify, seems to be entitled to less consideration ; because if we cannot inquire of them, the right to institute the inquiry is, after all, but a nominal one. The grand jury is supposed to be placed in some appropriate apartment, secure from the scrutiny of eavesdroppers and listeners. No person is permitted to be present, during their deliberations, nor at the taking of the question on finding a bill. It would be a serious objection to their proceedings, perhaps, if even the law officer of the government was present at such a period. How any juror voted, is a secret no juror is permitted to disclose ; but whether twelve of their number concurred in finding a bill, is not a secret of the State, their fellows, or their own. It is a fact they of necessity profess to disclose, every time they promulgate their decision upon any bill laid before them. Accordingly we are of opinion that it is proper, under the circumstances of this case, and on the suggestion made by the defendant, for the court to inquire into the truth of the statement laid before them ; and that the defendant may, if in his power, prove his statement by the foreman, and his fellows of the grand jury. But it must be remembered, that the indictment being in due form indorsed as a true bill, by the foreman, the inference is that the fact is not as the defendant states it to have been;—an inference not to be controlled by vague, uncertain, or doubtful testimony. He will therefore be held to make out his case, to the entire satisfaction of the court, so as to leave no doubt on the subject.