## C. G. TRIPP v. STATE.

No. A-9284.  Oct. 15, 1937.
(72 Pac. 2d 529.)

Joe Adwon and James L. Gowdy, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., for the State.

DAVENPORT, P. J.  The plaintiff in error, hereinafter referred to as the defendant, was by information charged jointly with R. O. Snapp with the crime of illegal possession of intoxicating liquor; was tried separately, convicted and sentenced to pay a fine of $500 and to be confined in the county jail for 90 days.

When the case was called for trial, the defendant filed his motion to suppress the evidence, first, on the ground that the application for the search and seizure is based on information and belief, and not on positive facts.  Second, the description of the property is ambiguous, wrong,

indefinite, and uncertain, and cannot be ascertained without violating the Constitution and statutes of the state of Oklahoma. The defendant's motion to suppress the evidence was by the court overruled, and the defendant reserved an exception.

When the case was called for trial, and after the defendant had exhausted all his peremptory challenges, there remained among the jurors called three jurors, J. V. Johnson, Joe Layton, and W. F. Fowler, who on their voir dire were asked the following questions and gave the following answers:

"Q. Mr. Johnson, is that your name? A. Yes, sir. Q. You told the court at this time you hold a deputy sheriff's commission or reserve commission? A. Reserve. Q. Issued by the sheriff of this county? A. The sheriff's office. Q. The sheriff's office; and you are a reserve deputy at this time under the sheriff of the county, are you not? A. Yes, sir. Q. It has not been revoked by the sheriff of the county, has it? A. Not that I know of. Q. And you are the same Mr. Johnson that was questioned by me a few minutes ago on the jury? A. Yes, sir. Q. And you are a member of this regular panel, are you not? A. Yes, sir."

Joe Layton was examined and stated as follows:

"Q. Now Mr. Layton, you are at this time an officer, are you not? A. I carry a commission, I don't work at it. Q. You carry a commission? A. Yes, sir. Q. What kind of a commission do you carry, Mr. Layton? A. Well, I got a city commission. Q. Are you at this time a reserve commissioned officer? A. Yes, sir. Q. How long, Mr. Layton? A. About twenty years. Q. And after that length of time you retire on a pension? A. No, sir. Q. But you are still subject to be called out on service at any time? A. Yes, they could call me but they never have."

W. L. Fowler, being examined on his voir dire, stated:

"Q. At this time you hold what we call a deputy sheriff's commission, or reserve commission, do you? A. Yes, sir. Q. Has it been revoked? A. Not that I know of. Q. It is still in existence? A. So far as I know."

On cross-examination Mr. Daugherty asked for an exhibit to be marked Exhibit 1, and asked Mr. Johnson if it was the same form of commission issued to him, and Mr. Johnson stated, "I do not have my glasses and can't compare them. It looks the same, yes, sir." He then asked Mr. Fowler if it was the same form issued to him and he said it was.

He then asked Mr. Layton if his commission was that of a police officer; he said he also had a commission like the exhibit two or three years ago, and, when asked, "You don't have it any more," replied, "I don't think I have got any."

The form of the commission issued is as follows:

"No. B B 25 Commission Reserve Deputy Sheriff.

"Know all men by these presents:

"That I, Stanley Rogers, Sheriff of Oklahoma County, State of Oklahoma, reposing special confidence in the worth, ability and integrity of ............, do, by virtue of my office, appoint him as Reserve Deputy Sheriff, without compensation, to be and act as such in a manner provided by law. This commission expires December 31, 1936, unless otherwise revoked.

"In Testimony Whereof, I have hereunto set my hand this............day of ..................193.....

"..............................,

"Sheriff of Oklahoma County, Oklahoma.

"Sheriff's office 7—4591
"County Radio 2—4231."

The court then asked the jurors as to what authority

they understood they had under this reserve commission, and the defendant interposed objections to the remarks of the court asking the jurors who had been called who held commissions as reserve deputies as to what they thought their authority was, which objections were by the court overruled, and the defendant reserved an exception.

The trial proceeded with the three jurors challenged by the defendant on the ground they were officers and not legal jurors. Evidence was introduced showing that acting upon a search warrant to search a one-story frame building known as the Italian Garden, located at 5301 Lincoln boulevard, adjacent to Oklahoma City, Okla., in said county and state, that Sheriff Rogers was one of the main witnesses against the defendant, and testified to seeing the defendant at the Italian Garden, and afterwards arresting him and forcing him to deliver his key to his home, which was a short distance from the place known as the Italian Garden, at which place the officers claim they found a quantity of whisky.

After a careful examination of this record, it is not deemed necessary to set out the evidence in full. The defendant has assigned nine errors alleged to have been committed by the trial court. Several of them possess merit, but the only one this court deems necessary to discuss is assignment 8, which is as follows:

"That the court erred in overruling plaintiff in error's motion to dismiss certain jurors disqualified by the statutes to serve in that capacity."

• The record discloses that a search of the defendant's home was made without any authority, the state attempting to justify their act on the ground that in the Italian Garden the officers claim to have found in the sink a broken bottle which contained whisky. The defendant was

in the garden at the time and was placed under arrest for having ale, but it appears from the record that no charge was filed against him for the ale claimed to have been found in the Italian Garden.

R. O. Snapp, testifying for the defendant, stated that the defendant was in the Italian Garden when the officers came in. Witness stated he was manager for Mr. Sleeper, and that the defendant was not working in the Italian Garden, and was not employed there.

Because of the fact that the defendant was in the Italian Garden, in order to justify the action in searching the defendant's home which was a short distance from the Italian Garden, they claim they put the defendant under arrest and made him deliver the keys to his home to the officers, and, when they went to his home and searched it, they found the whisky. The search warrant only authorized the search of the Italian Garden and not for any out buildings, cabins, or residence. The search warrant did not authorize the officers to search the home of the defendant, and the view we take of this record it is not necessary to discuss the question of the search of the defendant's home, except to say it was an unlawful search.

Section 805, O. S. 1931 (38 Okla. St. Ann. § 10) in part is as follows:

"All male citizens, residing in this state, having the qualifications of electors, of sound mind and discretion, of good moral character, not justices of the Supreme Court, or judges of the Criminal Court of Appeals, district court, superior court or county court, sheriffs or deputy sheriffs, constables, jailers, licensed attorneys, engaged in the practice of law, habitual drunkards, not afflicted with a bodily infirmity amounting to a disability, and who have never been convicted of any infamous crime or served a term of imprisonment in any penitentiary, for the commission

of a felony, are, competent jurors to serve on all grand and petit juries within their counties"; and providing further exemptions.

The question decisive in this case is whether the jurors Johnson, Layton, and Fowler were incompetent jurors to serve as three of the petit jurors to try the defendant. It is agreed by the state and the defendant that the copy of the form of the commission incorporated in this record is a true and correct copy of the commission the jurors Johnson and Fowler had at the time they sat in the trial of the case. The copy was not signed by any one, but all parties agreed to it being a correct copy of the commission.

A defendant charged with crime is entitled to a fair and impartial trial by a jury of his peers. The question in this case is, Did he have such a trial with Johnson and Fowler holding deputy sheriff's commissions, and Layton a city commission as an officer, at the time they served on the jury? The action of the trial court when they examined the jurors on their voir dire which disclosed they were holding deputy sheriff commissions, and the examination by the court of Stanley Rogers, sheriff, as to what his understanding was of the duties these reserve deputies should perform, is a new departure from the law regulating the impaneling of a jury, and, if courts of this state are permitted to follow such a proceeding, it will result not only in confusion, but will be unfair to the party charged. The sheriff, under the law, has no authority to advise the court as to the authority of his deputies when they are called as a juror. The impaneling and questioning of a juror on his voir dire is for the court and counsel on the respective sides of the case.

This court has been unable to find any authority con-

ferred upon the sheriff to issue commissions to deputies called a reserve commission. In fact, the law specifically provides how the sheriff may appoint his deputies and what is necessary for the deputy to do to become a legal deputy. These deputies given a reserve commission by the sheriff in all probabilities are men who like to have authority and laud it over their fellowmen because they claim to be a deputy sheriff. It is easy to understand why some men seek this kind of an appointment. When the sheriff issues these reserve commissions to different men throughout the county, he does so without any authority of law, and the sheriff is misleading the public, and their actions are liable to create trouble with the citizenship of the county. There is no reason given why sheriffs continue to issue these reserve commissions, for the reason that the law on the question has long been settled as to these special deputies being disqualified to sit as jurors while holding commissions as deputies, reserve or regular deputies.

The Circuit Court of Appeals for the Eighth Circuit, in 1905, held that a deputy holding one of these commissions was not a legal juror under the provisions of our statute, as to who was qualified to sit as jurors. In Robinson v. Territory of Oklahoma, 148 F. 830, the court in its syllabus stated:

"Deputy sheriffs under Oklahoma Statute, Wilson's Rev. & Ann. St. Okla. 1903, section 3308, which disqualifies sheriffs from performing jury service, applies as well to deputies as to principal sheriffs, and such an officer, when challenged for said cause, is not eligible to sit on a jury in a criminal case."

In Robinson v. Territory of Oklahoma, supra, the facts are identical with the facts in this case. When the Robinson Case was called for trial, R. A. McCracken

was sworn as a juryman, and answered questions touching his qualifications to sit as a juror in the case; the juror testified in response to the question: "Are you a deputy sheriff in this county? I have a commission, I am not a regular working sheriff. I have a commission as a deputy sheriff." The juror was challenged, challenge overruled, and exceptions saved.

Under our statute a deputy sheriff is disqualified for jury service. This protection is granted the defendant, and is absolute, and the court, when a juror is called and is being examined on his voir dire, and it is disclosed by his statement that he is a deputy sheriff, whether regular or reserved, on its own motion should have excused the juror being examined. It is not the province of the court to ignore the statute and permit deputies to sit on the jury in the trial of a criminal case. It is the duty of the court to see that only legal jurors are impaneled to try a defendant. In this case not only was the court's attention directed to the fact that jurors Johnson and Fowler held commissions as deputy sheriffs, and that Layton held a police commission, but the defendant challenged the jurors on the ground they held an officer's commission, bringing the question directly to the court's attention, yet the court ignored the challenge and permitted them to sit as jurors. If the practice permitted by the court in this case is continued, it will strike at the very foundation of our jury system, as it is a clear violation of our statute. In Robinson v. Territory of Oklahoma, supra, the court, in discussing the question of the jurors being disqualified, stated:

"Section 3308, Wilson's Rev. & Ann. St. of Okla. 1903, disqualies sheriffs from performing jury service. This disqualification is the expression of a wise public policy. The sheriff is a public officer."

Section 7630, O. S. 1931 (19 Okla. St. Ann. § 547), provides for a sheriff appointing such a number of deputy sheriffs as the business of his office may require; the appointments to be approved by the county commissioners. The sheriff is also made responsible for the acts of his deputies, making the sheriff and his sureties responsible for the acts and omissions of his undersheriffs and deputies, and also persons deputed to do particular acts.

Every reason of public policy which disqualifies the sheriff for jury service appertains to deputy sheriffs, and the latter falls not only within the reason of the rule disqualifying the former but within the letter of the statute disqualifying sheriffs. Within the purview of this statute we hold that the trial court erred in overruling the defendant's challenge to the jurors Johnson, Fowler, and Layton, as the record clearly shows that Johnson and Fowler were deputies and disqualified to sit as jurors in a criminal case.

For reasons herein stated, the judgment of the trial court is reversed.

DOYLE and BAREFOOT, JJ., concur.