STATE of Oklahoma, Plaintiff in Error,

v.

Tom SMITH, Defendant in Error.

No. A–12456.

Criminal Court of Appeals of Oklahoma.

Jan. 15, 1958.

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., Joe Looney, County Atty., Seminole County, T. H. Williams, Asst. County Atty., Wewoka, for plaintiff in error.

Walter Billingsley and Rudolph Hargrave, Wewoka, for defendant in error.

BRETT, Presiding Judge.

This is an appeal on a reserved question of law by the State of Oklahoma to a ruling of the Honorable A. L. Commons, specially assigned District Judge, sustaining the defendant's motion to quash the indictment returned by a grand jury of the defendant, Tom Smith. The motion to quash was sustained on the proposition that Mr. E. L. Murrell, who qualified for grand jury service, was in fact a deputy sheriff of Seminole County on Sheriff Bill Nicholson's staff, and therefore not eligible under the law to serve. 38 O.S.1951 § 28. Simply stated, the question presented to us is was Mr. Murrell a deputy sheriff and was the indictment therefore subject to being quashed and did the trial court err in so holding?

**721**

This question was resolved in a former opinion and is now here on the defendant's petition for rehearing. The former opinion was written while the defendant was in default of a brief, then granted additional time before the opinion was handed down. Due to some inadvertence, the brief was not called to our attention until after the opinion was handed down. The first opinion filed herein is therefore ordered withdrawn, and this opinion, written with the aid of the briefs of both parties is filed as the opinion of the court on the reserved question.

The first proposition urged by the state in its brief is:

"The trial court erred in permitting the defendant to file his second motion to quash the indictment and hearing evidence and testimony upon same, and that said second motion was 'res adjudicata' and/or that the trial court abused its discretionary power in allowing the renewal of said second motion involving the same legal matters, without permission of the court."

Contrary to the state's contention, the record clearly shows the defendant obtained the permission of Judge Commons to file his amended motion to quash. The state urges Judge McKeel's order overruling the motion to quash on November 5, 1956, was res judicata. But, in Freeman on Judgments, Vol. 2, § 669, relied on by both the state and the defendant, it is asserted:

"These rules are for the orderly conduct of business, and are not founded on the principle of res judicata. It is not uncommon, in courts of law, to deny a motion one day and on another to grant it on a more enlarged state of facts. But while, in the case of ordinary motions, courts may, under proper circumstances, permit them to be renewed, the rules here referred to seem to require that leave of the court must first be obtained before a motion can be renewed upon substantially the same grounds as those upon which the court has already passed. It is entirely in the discretion of a court to hear a renewal of a motion or not."

The first question herewith presented on this issue is did the trial court abuse its discretion in permitting the filing of the amended motion to quash, in substance the same as the former motion presented to Judge McKeel? To determine this question, we must look to the facts as revealed in the record. The regular trial judge, Honorable Bob Howell, disqualified because of a bitter campaign with the defendant for the District Judgeship. Judge John Boyce McKeel, Associate Judge in the same district, was requested to hear the motion to quash and try the case. Judge McKeel heard the motion on November 5, 1956, and overruled the same. At the conclusion of the hearing thereon, Judge McKeel asked if a motion to disqualify him was to be filed. Such motion was filed the same afternoon and was sustained by Judge McKeel on the ground of prejudice against a fair and impartial trial. Judge A. L. Commons of Miami, Ottawa County, was assigned by the Supreme Court to try the case. We are of the opinion that better practice would have been for Judge McKeel, before he certified his disqualification, to vacate the order overruling the motion to quash in favor of a ruling by his successor as the trial judge in the case. Thereafter, an amended verified motion to quash was filed before Judge Commons, setting forth all the matters prior to Judge McKeel's action and also stating that Judge McKeel, in effect, suggested his own disqualification to sit, and further alleging Judge McKeel's prejudice by reason of his close association with Judge Howell. Thereafter, on November 13, 1956, the matter came on for hearing on the defendant's motion to quash before Judge Commons, who granted leave to again present said motion to quash and sustained the same after a full hearing thereon, the grounds being that Mr. Murrell was a deputy sheriff and the jury was therefore not properly formed and was an unauthorized body.

In passing on the motion and the question of whether or not he was bound by Judge McKeel's ruling, Judge Commons had the right to consider the relationship existing between Judge Howell and Judge McKeel and the reasons for Judge Howell's disqualification as possibly affecting Judge McKeel's qualification to pass on the motion to quash. Moreover, he had the right to consider the fact that Judge McKeel admitted his disqualification to determine the issue involved on both the motion to quash and to sit as trial judge in the case. It undoubtedly occurred to Judge Commons that if he was disqualified to try the case, he was equally disqualified to pass upon the motion to quash. Furthermore, he had the right to consider the question involved in the motion to quash might become a vital issue in the case at varying stages in the trial, and particularly on the motion for new trial, in the event of the defendant's conviction. Finally, two judges had already conceded possible bias and prejudice, one of whom had passed on the motion to quash. Judge Commons concluded that the defendant was entitled to have his motion passed on by a judge who had not conceded bias or prejudice. Under these conditions, we can not say there was an abuse of discretion based upon a clearly erroneous conclusion and judgment on the facts presented in support of and against the motion to reconsider the motion to quash. It has been uniformly held by this Court the decisions of the trial court will not be set aside in the absence of a manifest abuse of discretion. Stevens v. State, 94 Okl.Cr. 216, 232 P.2d 949.

The second proposition urged by the state is:

"The trial court committed gross error in holding that the grand juror, Ernie Murrell, was a deputy sheriff in contravention of Title 38. O.S.1951, Sec. 28 * * *."

38 O.S.1951 § 28 reads, in part, as follows:

"All citizens residing in this State, having the qualifications of electors, of sound mind and discretion, of good moral character, not * * * sheriffs, or deputy sheriffs, * * * are competent jurors to serve on all grand and petit juries within their counties, * * *."

The state urges that Mr. Murrell held nothing more than a courtesy card from Sheriff Nicholson which did not vest him with the powers of a deputy sheriff. The cases relied on by the state are cases involving courtesy cards sometimes issued by Sheriffs for political purposes which have been vigorously condemned by this Court. Fooshee v. State, 3 Okl.Cr. 666, 108 P. 554; Tripp v. State, 63 Okl.Cr. 41, 72 P.2d 529; Allen v. State, 70 Okl.Cr. 143, 105 P.2d 450; Murphy v. State, 95 Okl.Cr. 333, 245 P.2d 741. The record shows that Sheriff Nicholson issued about five hundred such Sheriff's courtesy cards. It also shows he issued to Mr. Murrell not a courtesy card but a Sheriff's commission naming him as a deputy sheriff. It also appears Mr. Murrell took the oath of deputy sheriff of Seminole County with all the other lawful salaried deputy sheriffs, and that the fact of his taking the oath was attested by the then County Judge, Honorable Hubert Hargrave. The form of the said commission is as follows:

"Sheriff's Commission

"State of Oklahoma, County of Seminole, SS.

"I, W. M. (Bill) Nicholson, the duly elected, qualified and acting Sheriff of Seminole County, Oklahoma, do hereby appoint and depute the within signed:

"State Seal

"Ernest Murrell

to do and perform the particular act as follows:

"Deputy Sheriff, with authority to serve process and enforce all laws of the State of Oklahoma and the United States of America.

"Deputy's signature /s/ Ernest Murrell

"Jan. 3 1955

"/s/ W. M. Nicholson

"Sheriff"

The foregoing commission is the same as that carried by all the other duly appointed deputy sheriffs of Seminole County. It conferred all the rights, powers, and prerogatives of a bonded, salaried deputy. It is thus apparent that the commissioning of Mr. Murrell as a deputy sheriff was not intended as that of a courtesy card holder, but was intended to be that of a duly constituted deputy sheriff. Sheriff Bill Nicholson's testimony was that he commissioned Mr. Murrell a deputy sheriff; that he was not given a courtesy card, but that Mr. Murrell was given the same commission as his bonded deputy sheriffs. He further testified Mr. Murrell was sworn with his other deputies and that he was one of his deputies and had been such since the Sheriff first came in office on January 3, 1955. Furthermore, the record discloses that no one disputed that he was a deputy sheriff, but Mr. Murrell himself and the State prosecutor. Moreover, while the grand jury was in session, with Mr. Murrell sitting as a purported juror, Mr. Murrell acted as a deputy of the Sheriff in the matter of investigation and in bringing prisoners into the county from an adjoining county. The record shows that Mr. Murrell as a special investigator for the Carter Oil Company held one-hundred and seven such deputy sheriff's commissions from other Sheriffs in the twenty-eight states in which the Carter Oil Company operates. It is true he filed no bond, nor was his appointment approved by the County Commissioners.

It is well to note the courtesy cards referred to repeatedly by the state in its brief were not similar to the deputy sheriff's commission involved. It should also be noted that the Sheriff, Honorable Bill Nicholson, was the principal witness before the grand jury against the defendant, Tom Smith. The association between Mr. Murrell and Sheriff Nicholson was such that Mr. Murrell's presence on the jury was practically as objectionable as it would have been if Sheriff Nicholson himself had been on the jury. As was pointed out in Allen v. State, supra, such fact would weigh heavily in determining such an issue. This fact would militate against Mr. Murrell's qualification as a fair and impartial grand juror.

Under the foregoing statute, 38 O.S. 1951 § 28, the qualifications for both grand

and petit jury service is identical. Cases in Oklahoma and other jurisdictions have held that one bearing the official identity of a deputy sheriff is not qualified for jury service. In Carr v. State, 65 Okl.Cr. 201, 84 P.2d 42, 47, this Court held a person who had received a written commission as a deputy sheriff vesting him with all the authorized powers of a deputy, who has taken the oath as such deputy, was in fact such an officer, even though he had not filed a bond, was not salaried, had not been approved by the County Commissioners, and had no authority to serve civil process. Therein, the Court said that an accused was entitled to jurors who were unbiased and qualified and, "not only of one such juror, nor eleven but twelve of such class." Reeson v. State, 41 Okl.Cr. 297, 272 P. 1033; Henderson v. State, 95 Okl.Cr. 342, 246 P.2d 393. In Cawthon v. State, 115 Fla. 801, 156 So. 129, at page 130, it was said:

"The purpose of the statute prohibiting sheriffs and their deputies from serving as grand and petit jurors is not only to preserve the fairness and impartiality of grand and petit jurors in fact, but to assure an accused that the jurors who will be called upon to consider his case will be free from any suspicion of bias or prejudice against him on account of their official relationship with prosecuting officers of the state.

"We therefore hold that a person commissioned in writing by the sheriff of a county as one of his deputies, who has accepted such commission and has availed himself of the privilege of a peace officer to carry a pistol, is disqualified to serve as a juror, grand or petit, under the laws of this state, even though he was not given bond nor in any other way exercised the duties of the office of deputy sheriff under the commission as such which he has accepted and holds."

Generally speaking, a statute which affects public interest in the promotion of justice and prescribes the manner in which public interests are to be performed is held to be mandatory. State v. Muldoon, 67 R.I. 80, 20 A.2d 687. The provisions of 38 O.S.1951 § 28 are mandatory since they affect public justice. Where a grand juror is not selected according to law or in direct ignorance or violation of the law's mandatory provisions, such juror constitutes no part of a legal jury. State v. Symonds, 36 Me. 128; Hayes v. State, 3 Okl.Cr. 1, 103 P. 1061, 1064. The selection of Mr. Murrell as a grand juror with his palpable disqualification to sit on a jury constituted an open disregard of the statute's mandatory provisions. Hence, as was said in Hayes v. State, supra, quoting from Low's case, 4 Me. 453, 16 Am.Dec. 271:

"* * * the facts, if true, must present a case, not of technical or possible or hypothetical, but of manifest and undeniable, wrong to the defendant, such as putting him to trial on an indictment not found by 12 jurors, and which is therefore no indictment, but an accusation made by an unauthorized body of men."

In the Hayes case it was further said:

"Before any person can be lawfully tried for an offense, he must be accused thereof according to law. This principle so essential to liberty and good government protects all alike from the oppression of political power and the plottings of private malice. The proposition presented in this case involves, irrespective of her guilt or innocence the lawful rights of the defendant, and in its decision the lawful rights of every citizen. It is apparent from the record that there was less than 12 jurors present when the witnesses appeared and the investigation of the charge was made. This number did not constitute a legal grand jury for the purpose of investigating offenses committed in Oklahoma Territory before statehood. There must be present 12 grand jurors at least, because the concurrence of that number was absolutely necessary to put the defendant on her trial. * * *

At common law an indictment is invalid where it is found and returned by a grand jury not legally constituted * * *."

We are of the opinion that the jury in this case was not a jury of twelve qualified jurors, but was composed, in fact, of eleven qualified grand jurors and one deputy sheriff. Hence, the grand jury was an unauthorized body of men. The irregularity herein was such the grand jury did not acquire legal existence and the indictment was subject to being quashed. 42 C.J.S. Indictments & Informations § 207, note 21, p. 1183. It is therefore apparent the trial judge did not abuse his discretion in holding the motion to quash the indictment should be sustained.

The procedure followed herein was approved in Spivey v. State, 69 Okl.Cr. 397, 104 P.2d 263, 276, where the late Judge Doyle said:

"Our statute provides: 'The common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general Statutes of Oklahoma' etc. Sec. 2, 12 Okl.St.Ann. § 2.

"At the common law, an indictment is invalid and may be quashed where it is found and returned by a grand jury not legally constituted, or where there was no legal and competent evidence before the grand jury upon which it was based; and this invalidity might be shown upon a plea in abatement. Hayes v. State, 3 Okl.Cr. 1, 103 P. 1061.

"Under the statute, sec. 2, supra, and the provisions of the Code of Criminal Procedure, the motion to quash and set aside an indictment takes the place of the plea in abatement at common law, a plea the subject matter of which may be any objection which could not be properly interposed by a plea in bar.

"These provisions do not qualify or change the rule of the common law requiring that an indictment must be found on legal and competent evidence."

Or, that it must be returned by a lawfully constituted grand jury. Unless the procedure approved by Judge Doyle is open to an accused, one not in custody or who is a non-resident of the county or state, would be without legal remedy as to grand jurors disqualified by the positive provisions of the statute to serve as such.

Nevertheless, it is urged that the provisions of 22 O.S.1951 § 320 and § 495 are a bar to the motion to quash. The statutes read:

"Neither the State, nor a person held to answer a charge for a public offense, can take advantage of any objection to the panel or to an individual grand juror unless it be by challenge, and before the grand jury is sworn, except that after the grand jury is sworn, and before the indictment is found, the court may, in its discretion, upon a good cause shown, receive and allow a challenge." (22 O.S.1951 § 320.)

" * * * When a grand juror has been fully examined as to his qualifications to sit, and has answered under oath that he is qualified, and has been received by the court and permitted to act, his incompetency shall not thereafter be shown as a ground of objection to any indictment returned by that grand jury." (22 O.S.1951 § 495.)

We do not believe it was intended that said provisions should negate the mandatory provisions of 38 O.S.1951 § 28. Clearly, the provisions of § 320 are not applicable herein, since the provisions thereof apply only to challenge to jurors, before indictment, by a person held in custody to answer a charge for a public offense. The provisions of § 495 would apply to any juror, either grand or petit, objectionable for any other reason except such as would constitute an absolute disqualification or amount to a condition of prejudice tending to deny a fair and impartial trial or unbiased proceeding. Some features of such

matters were considered by us in Hardesty v. State, Okl.Cr., 291 P.2d 351, as applied to petit jurors.

The provisions of 22 O.S.1951 § 493 read, in part, as follows:

"The indictment or information must be set aside by the court, in which the defendant is arraigned, and upon his motion in any of the following cases:

"1. When it is not found, indorsed, presented or filed, as prescribed by the statutes or when the grand jury is not drawn and impaneled as provided by law, * * *."

It is thus apparent that the provisions of § 495, to the effect that a juror's incompetency shall not thereafter be inquired into must be harmonized with the other statutes and the common law which accords the defendant the right to attack the validity of the indictment. The law clearly makes one of the grounds of disqualification for jury service that of being a deputy sheriff. If the provisions of § 495 are not limited in their application, then the mandatory provisions of 38 O.S.1951 § 28 and the provisions of 22 O.S.1951 § 493 mean absolutely nothing. It is thus apparent that the quoted portion of § 495 is applicable only to jurors who may be disqualified for some other reason than a positive mandatory prohibition of the statute not amounting to a positive disqualification and not affecting the fundamental composition of the jury. One who is disqualified by statute to serve cannot be qualified either by waiver or laches. In The Grand Jury by Edwards, page 72, it is said:

"A distinction, however, is to be noted between disqualifications and exemptions; the former vitiate the proceedings if attacked before issue joined; the latter are privileges which may be waived by the persons entitled to the benefit thereof and an indictment will not be quashed because an exempt person served as a grand juror."

The selection of Mr. Murrell, who was disqualified for jury service by the mandatory provisions of 38 O.S.1951 § 28 was an invalid and abortive act. The disqualification of a grand juror by reason of his being a deputy sheriff is fundamental and grounds for motion to quash the indictment, especially where the Sheriff is the principal witness against the defendant.

We urge our trial courts to exercise meticulous care in the matter of inquiry into jurors' qualifications on either grand or petit juries. To do otherwise invites injustice, results in needless expense, waste of time, and sometimes a total failure of justice. Prospective jurors, among other things, should be asked if they possess any kind of deputy sheriff's commission, and if so, they should be promptly excused. There are too many citizens free from the taint of bias and prejudice for our courts to indulge in speculation on such matters and gamble with justice.

We are of the opinion the trial judge neither erred in permitting the filing and hearing of the amended motion to quash nor in the sustaining of the same under the conditions herewith presented. The reserved question herein is accordingly resolved against the state and in favor of the defendant.

POWELL and NIX, JJ., concur.

POWELL, Judge (concurring).

I concur in paragraph 1 of the syllabus by reason of the special circumstances recited in the opinion. Ordinarily, I think the ruling of one judge becomes the law of the case in that court and one judge of a particular court should not ordinarily review or disturb the rulings of another judge in the same or coordinate court of the same case. 21 C.J.S. Courts § 195, p. 340; State ex rel. L. J. Mueller Furnace Co. v. Buckner, 207 Mo.App. 48, 229 S.W. 392; United States v. Davis, D.C., 3 F. Supp. 97.

I think that it should be emphasized that the commission issued grand juror Ernest Murrell as a deputy sheriff of Seminole County by Sheriff W. M. Nicholson could not by any interpretation be classed as a

"courtesy commission," or a "courtesy card".

What is a courtesy card commission? That question has been answered in Allen v. State, 70 Okl.Cr. 143, 105 P.2d 450, 454, where this court condemned such commissions. It is a card, as said in the Allen case, that the sheriffs of Oklahoma issue in an effort to appease the politically faithful who helped them get elected to office, and should read:

> "Sheriff's Office,
> "———— County,
> "State of Oklahoma. No. ——
> "Know All Men By These Presents:
> "That I, ———————— Sheriff, repose special confidence in the Honesty, Integrity and Good Citizenship of ————————.
> "Any courtesy extended will be appreciated.
> "Given under my hand this ———— day of ————, 19—.
> "(Signed) ————————
> "Sheriff."

Allen v. State, supra. See also Murphy v. State, 95 Okl.Cr. 333, 245 P.2d 741, where courtesy card involved.

The evidence in the within case discloses that Sheriff Nicholson issued about 500 courtesy cards, but according to his testimony, he issued only seven cards similar to the one issued to Ernest Murrell, which card is quoted in full in Judge BRETT'S opinion herein. It purports to appoint Murrell a deputy sheriff and authorizes him to serve process and enforce all the laws of the State of Oklahoma and the United States of America, in Seminole County.

Sheriff Nicholson himself considered Murrell a deputy. He said the commission issued to Mr. Murrell was the same as the commissions issued his salaried deputies, and he said that Murrell was sworn in along with the salaried deputies.

I think the case of Carr v. State, 65 Okl. Cr. 201, 84 P.2d 42, is conclusive of the further questions interposed by reason of the failure of Murrell to file a bond or to get his appointment approved by the Board of County Commissioners. Murrell was one of Sheriff Nicholson's deputies and if he had while purportedly acting under authority of the commission killed some person no doubt the sheriff would have had to answer in a civil suit, as conceivably might be true where a "courtesy card" deputy would be involved unless the card was clearly worded as suggested in Allen v. State, supra.

While the effect of Judge BRETT'S opinion is to uphold Judge Commons in abating further prosecution under the indictment returned by the grand jury, still this does not mean that the evidence turned up and the effort expended must go for naught in any case not barred by the statute of limitations, because in this State prosecutions may be by information as well as by indictment, and until jeopardy attaches one method does not bar the other, after the grand jury has been discharged. See Pierro v. State, 95 Okl.Cr. 425, 247 P.2d 291, and cases cited.