PATTERSON et al. v. STROECKER.*

(Circuit Court of Appeals, Ninth Circuit. October 8, 1917.)

No. 2923.

1. MINES AND MINERALS ☞64—LEASES—RIGHT TO ROYALTY.

A husband, to whom an owner of a mining claim had contracted to convey a one-fourth interest if he would pay the expense of sinking a hole and do the assessment work, agreed with his wife, that she should have such interest in consideration of paying the necessary expenses of carrying out the agreement. Thereafter he took a lease from the owner of the three-fourths interest, which provided that, as part consideration therefor, the undivided one-fourth interest should be covered and included in such lease, and that the claim should at all times be worked and considered as a whole. Thereafter, and before mining operations began, he conveyed the one-fourth interest to the wife, and at the same time sublet to a third person under an agreement whereby the sublessee was to pay him a royalty of 5 per cent. in addition to the 25 per cent. agreed to be paid the owner of the three-fourths interest by the original lease. *Held*, that the 5 per cent. of the output of the mine equitably belonged to the wife rather than the husband, and she could compel payment thereof without any transfer or assignment from the husband.

2. APPEAL AND ERROR ☞1097(3)—SUBSEQUENT APPEALS—LAW OF THE CASE.

Where, on a former appeal in a suit by the husband's trustee in bankruptcy against the wife, it was decided that the trial court erred in dismissing the bill at the conclusion of the testimony, on the ground that the husband's deed to the wife conveyed the interest in the royalty, and that the burden was cast on the wife to show the good faith and honesty of the conveyance, such holding was not conclusive against the rights of the wife on a subsequent appeal, after a trial on which the good faith and honesty of the conveyance was shown.

Ross, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Fourth Division of the Territory of Alaska; Charles E. Bunnell, Judge.

Suit by Edward Stroecker, as trustee of H. J. Patterson, bankrupt, against Mariam A. Patterson and another. From a decree in favor of plaintiff, defendants appeal. Reversed and remanded, with instructions.

The appellee, as trustee of the estate of H. J. Patterson, a bankrupt, brought a suit for the benefit of the creditors of the bankrupt against the bankrupt and his wife to recover a one-fourth interest in the Daly Bench placer mining claim and gold dust of the value of $5,174.66 extracted by certain lessees from the claim. The case was on appeal to this court in Stroecker v. Patterson, 220 Fed. 21, 135 C. C. A. 597, in which this court reversed a decree rendered against the trustee upon the conclusion of the complainant's evidence in the case, holding that, in view of the circumstances and the testimony, the burden was cast upon the defendants in the suit to show the good faith and honesty of the conveyances in question, and that the court below was in error in dismissing the suit upon the conclusion of the complainant's evidence, saying: "The law is well settled that entire fairness is required in dealings between husband and wife, so far as they affect the rights of creditors." Upon the second trial the court below found against the trustee on his claim to a one-fourth interest in the mining claim, but found in his favor on his claim to the gold dust. The court below found in substance the following facts:

On September 19, 1910, James Wickersham, the owner of the Daly Bench placer claim, entered into a written agreement with H. J. Patterson to convey

*Rehearing denied January 7, 1918.

to him an undivided one-fourth interest in the claim, if he would pay the expense of sinking one hole to bedrock on the claim, and do the assessment work for the year 1910. Thereafter Patterson entered into an agreement with his wife, whereby the latter, in consideration of paying the necessary expenses of carrying out the agreement, should be the owner of the one-fourth interest when title was acquired thereto, and she thereafter paid said expenses out of her own funds and her separate property. On October 14, 1911, Wickersham conveyed to Patterson an undivided one-fourth interest in the claim, pursuant to the contract. Said deed was so executed to H. J. Patterson without the knowledge or consent of his wife. At the time of the conveyance Wickersham said: "I will give you the deed, and you can make the deed to any one you like." Prior to the execution of said deed, and on October 12, 1911, Wickersham executed a lease to Patterson of the placer mining claim. In the lease there was the following provision: "As part consideration of this lease the party of the second part [Patterson] agrees that his undivided one-fourth interest in said premises shall be covered and included in the terms of this lease, and shall also at all times be subject to any debts, defaults, or damages resulting from the working under this lease or for violation thereof, and the said Daly claim shall at all times be worked and considered as a whole between the parties hereto, and all subject to the terms of this lease, and it is especially agreed that the party of the first part shall have a first lien upon the whole of the output of the whole of the Daly claim, including the undivided one-fourth interest of the party of the second part for the payment of the royalty reserved to the party of the first part, and the performance of the terms of this lease." The lease was for four years, and the royalty reserved to the lessor was 25 per cent. of the gross amount of the clean-ups. The lease recited that Wickersham was the owner of an undivided three-fourths interest, and that H. J. Patterson, the lessee, was the owner of an undivided one-fourth. On November 27, 1911, Patterson sublet the claim to one Hamilton, on the same terms as stated in the lease from Wickersham, but requiring Hamilton to pay to Patterson, in addition to the royalty due to Wickersham, 5 per cent. of the gross amount of each clean-up. Mrs. Patterson had knowledge of the terms and conditions of the lease from Wickersham to her husband, and also of the sublease to Hamilton. On November 27, 1911, Patterson executed to his wife a quitclaim deed for the one-fourth interest in the claim, in consideration of the money paid by her for work in sinking holes on the claim. Patterson did not at any time transfer to his wife any of his rights in the contract with Hamilton, and did not transfer to her the 5 per cent. of the gross output which he was to receive from Hamilton. Patterson was insolvent on November 27, 1911, and on April 16, 1912, he filed his petition to be adjudged a bankrupt. The $5,-174.66 in controversy are the proceeds of 5 per cent. of the gold dust taken from the mining claim during the year 1912.

As a conclusion of law the court found that the 5 per cent. of the gross output from the mine was reserved to Patterson as lessee of the mining claim, and not as the owner of an interest therein; that the deed which he made to his wife did not transfer to her any part of that 5 per cent., and that she acquired no right therein; that she received her one-fourth interest in the claim subject to all the burdens theretofore placed upon the same by her agent, H. J. Patterson, and acquired no right, title, or interest in or to any of the royalties under the lease or the sublease.

A. R. Heilig, of Fairbanks, Alaska, and Thomas R. White, of San Francisco, Cal., for appellants.

McGowan & Clark, Thomas A. McGowan, John A. Clark, and H. E. Pratt, all of Fairbanks, Alaska, and Charles J. Heggerty and Knight & Heggerty, all of San Francisco, Cal., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above).    [1] The appellee asserts that the question for decision is whether or not

the deed made by Patterson to his wife on November 27, 1911, carried with it an asignment or conveyance of the sublease made by Patterson to Hamilton on the same day, under which sublease Patterson retained 5 per cent. of the gross output of the whole claim. We think the question for decision is not thus limited, and that it involves a broader view of the equitable rights of Mrs. Patterson as the owner of a one-fourth interest in the mining claim. The proof on the second trial clearly established that the money furnished by Mrs. Patterson, whereby the one-fourth interest was so acquired, was her individual and separate property.

The situation should be viewed as it would be if the marriage relation did not exist. It may be expressed in this manner: A. holds the legal title to a one-fourth interest in a mining claim, in trust for B., who is the equitable owner thereof. The owner of the three-fourths interest enters into an agreement of lease with A., whereby the latter is to operate the whole claim, and pay the former 25 per cent. of the total output. A month later, and before the mining operations begin, A. deeds the one-fourth interest to B., and at the same time he sublets to C. under an agreement whereby C. is to pay him 5 per cent. of the gross output, in addition to the 25 per cent. agreed upon to be paid to the owner of the three-fourths interest. Whose is the 5 per cent. which was realized under the sublease? Does it belong to A., or does it belong to B.? It seems to us that in equity it clearly belongs to B.

When Patterson entered into an agreement of lease, by which the interest of his wife was bound for a four-year term, it is not to be assumed that she was to get nothing out of it. In case he realized profits from the lease, he was accountable to her for her share of those profits. If she had been paid for her interest at the same rate that Wickersham was paid, she would have received considerably more than 5 per cent. of the gross output. When Patterson sublet the property in such a way as to secure to himself the payment of 5 per cent. of the gross output, we think that Mrs. Patterson could have required him to turn over to her that 5 per cent. At the first clean-up she claimed it, and, but for an injunction, it would have been paid to her. She testified that Patterson, when he told her of the sublease, told her that he had reserved 5 per cent. for the one-fourth interest, and that she assented to it. Patterson testified to the same effect.

[2] It is contended that the decision of this court on the first appeal finally determined that Patterson's deed to his wife did not convey to her the 5 per cent. reserved to him in the assignment of the lease, and thereby settled the law of the case upon the present appeal. The decision of the court below on the first trial of the case was based wholly upon the effect of the deed from Patterson to his wife. On the appeal from that decision we held that the court below erred in holding that the deed conveyed to her the interest in the royalty which Patterson had reserved, our opinion saying:

"That deed did not purport to convey to the defendant Mariam A. Patterson any part of her husband's interest in the amount then due or to become due to him from Hamilton under the lease by which the latter worked the ground, and certainly did not convey to her any part of the five per cent. of the gross

mineral output which was derived from the undivided three-fourths of the claim owned by Wickersham."

We also held that the evidence in the case indicated that the conveyance by Patterson to his wife was for the purpose of defrauding his creditors, and that error was committed on the first trial in dismissing the complainant's bill at the conclusion of the complainant's testimony. We said "the burden was cast upon the defendants to show the good faith and honesty of the conveyance in question," and we remanded the cause for a new trial. Now, upon the second trial, the defendants have shown the good faith and honesty of the conveyance, and have shown that Mrs. Patterson is in equity entitled to the 5 per cent. which represented, as both she and her husband testified, her interest in the leased property. On the second trial the court below found against Mrs. Patterson, not on the ground that the question of her right to the 5 per cent. had been adjudicated by our decision, but on the ground that Patterson had not at any time assigned or transferred that 5 per cent. to his wife. We hold that no such transfer or assignment was necessary, that Mrs. Patterson's interest was not created by the deed which her husband made to her, that in equity she is entitled to all that her husband got out of the lease of her property, that she is the equitable owner of the 5 per cent. reserved, and could have compelled him to pay it. Our former decision is therefore not an adjudication of the merits of the controversy as they are now established by the evidence adduced on the second trial.

The decree, so far as it awards the appellee the proceeds of the gold dust in question, is reversed, and the cause is remanded, with instructions to enter a decree awarding the same to Mrs. Patterson.

ROSS, Circuit Judge (dissenting). The record of the case on the present appeal, as well as the record before us on the former appeal (220 Fed. 21, 135 C. C. A. 597), shows without dispute that the $5,174.66 in the registry of the court below was 5 per cent. of the gross amount of gold taken from the Daly Bench mining claim by H. C. Hamilton under the assignment made to him by H. J. Patterson of the lease to the latter from Wickersham. In the judgment of the court below dismissing the former suit appears the following respecting that money:

"And it further appearing from the records of this action that, on the 17th day of May, 1912, an order was made in this cause, directing H. C. Hamilton, as lessee of the Daly Bench, described in the complaint herein, [to] deposit with the clerk of this court 5 per cent. of the gross amount of gold mined by him upon said mining claim during the pendency of this action, as royalty accruing to the owner of the undivided one-fourth interest in said Daly Bench, the title to which is in controversy in this action, to be held to await the determination thereof, and that the value of the said 5 per cent. of the gross amount of gold so mined by the said Hamilton is $5,174.66. It is further ordered that, in the event that, within 10 days from the date of this judgment the plaintiff. has not filed with the clerk of this court a supersedeas bond, approved by the court, for an appeal from this judgment, the clerk of this court pay to the said Mariam A. Patterson, or her attorney, A. R. Heilig, the said sum of $5,174.66, if said gold dust or money has been deposited with him, and that, if the said Hamilton has deposited said gold dust with the American Bank of Alaska, then said bank pay said sum to the said Mariam A. Patterson, or her said attorney."

The identical written instruments appearing in the record of the present appeal were also shown on the former one, including the lease of the Daly Bench claim to H. J. Patterson for a term extending to October 12, 1915, reciting, among other things, the ownership by Wickersham of the undivided three-fourths thereof and the ownership by H. J. Patterson of the remaining one-fourth and reciting that Patterson had applied to Wickersham for a lease covering the entire claim upon certain terms and conditions which Wickersham thereby granted; that lease further reciting, among others things, that:

"As part consideration of this lease the party of the second part [H. J. Patterson] agrees that his undivided one-fourth interest in said premises shall be covered and included in the terms of this lease, and shall also at all times be subject to any debts, defaults, or damages resulting from the working under this lease, or for violation thereof, and the said Daly claim shall at all times be worked and considered as a whole between the parties hereto, and all subject to the terms of this lease; and it is especially agreed that the party of the first part [Wickersham] shall have a first lien upon the whole of the output of the whole of the Daly claim, including the undivided one-fourth interest of the party of the second part, for the payment of the royalty reserved to the party of the first part and the performance of the terms of this lease. * * * And the party of the second part [H. J. Patterson] does hereby specially agree not to assign this lease or lay, or any interest therein or thereunder, and not to sublet or sublease the said demised premises, or any part thereof, nor to permit the same, nor any part thereof, nor any interest therein, to pass to any other person whatever, without the written consent of the party of the first part [Wickersham] had and obtained, and this prohibition shall extend to the undivided one-fourth interest belonging to the party of the first part."

In discussing the deed from H. J. Patterson to his wife, and its effect, we said on the former appeal:

"The deed from the latter to his wife was made November 27, 1911, expressing a consideration of $1 and quitclaiming to her 'all his right, title, and interest, being an undivided one-fourth interest,' in the Daly Bench claim. That deed did not purport to convey to the defendant Mariam A. Patterson any part of her husband's interest in the amount then due or afterwards to become due to him from Hamilton under the lease by which the latter worked the ground, and certainly did not convey to her any part of the 5 per cent. of the gross mineral output which was derived from the undivided three-fourths of the claim owned by Wickersham. It is therefore impossible to sustain the judgment of the court below, awarding to the defendant Mariam A. Patterson the whole of the 5 per cent. of the mineral output of the claim realized by Hamilton in the working of the claim under the lease assigned to him."

Accordingly we reversed the judgment there appealed from, which had awarded to Mrs. Patterson the 5 per cent. of the gross output of the claim in controversy realized by Hamilton in the working of the claim under the lease assigned to him by H. J. Patterson. That the former judgment of this court in respect to the same money again in controversy—the pleadings and facts in the two cases being, so far as the present question is concerned, precisely the same—is the law of the case seems to me to be very plain. And especially difficult is it for me to see how equity can award to Mrs. Patterson any portion of the 5 per cent. of the gross mineral output of the claim that was yielded by the three-fourths thereof owned by Wickersham.

I therefore respectfully dissent from the judgment now given.