## UNITED STATES v. DAVIS et al.

District Court, S. D. New York.
April 12, 1933.

George J. Mintzer, of New York City, for the motion.

George Z. Medalie, U. S. Atty., of New York City (Louis Mead Treadwell, Asst. U. S. Atty., of New York City, of counsel), for the United States.

WOOLSEY, District Judge.

This motion is in all respects denied.

I. The motion here involved, which was argued on March 3d last, is made under somewhat unusual circumstances, and involves two points of more than passing interest. For that reason I reserved decision on it, and have given it my most careful consideration since the argument.

II. The procedural background of this motion is as follows:

On September 8, 1932, the federal grand jury brought in two indictments against James J. Davis, Raymond Walsh, Theodore G. Miller, and Bernard C. McGuire.

The first indictment—criminal docket No. 89—705—was brought under title 18 U. S. Code, § 88 (18 USC § 88), Criminal Code, § 37, for a conspiracy to violate the provisions of title 18 U. S. Code, § 387 (18 USCA § 387), Criminal Code, § 237, which forbids the importation of any paper, certificate, or instrument purporting to be or representing a ticket, chance, share, or interest in a lottery, or the shipment within the United States of such papers, certificates, or instruments by an express company or other carrier for transportation in interstate or foreign commerce, or the receipt of such papers, certificates, or instruments from such carrier after interstate transportation.

The second indictment—criminal docket No. 89—606—contained eight substantive counts alleging breach of the lottery statute above referred to through the receipt within this district of papers, certificates, or instruments purporting to be tickets, chances, shares, or interests in a lottery after they had been transported in interstate commerce from the state of Pennsylvania to the state

of New York, and also a ninth count for a conspiracy to receive such tickets in breach of said lottery statute.

The first indictment involved the tickets of the 1930 lottery for the Mooseheart charity ball scheme of the Loyal Order of Moose and the second indictment involved the lottery tickets for the same scheme for 1931.

Before the defendants went to trial, the defendant Davis moved to have each indictment severed as to him so that he might go to trial alone. This was granted.

On motion of the government, the two indictments were consolidated, and on September 19, 1932, the trial of the defendant Davis alone on the consolidated indictments thus severed as to him began before Judge Coleman.

On October 3, 1932, Judge Coleman declared a mistrial for reasons not here in any way relevant.

The present situation is that the consolidated indictments are shortly to be tried against all the defendants named therein, with the exception of the defendant McGuire, who on February 27, 1933, pleaded guilty to all the counts in both indictments and was sentenced.

III. During the trial of the defendant Davis, the defendant Miller was, by a subpœna duces tecum served on him as secretary of the propagation department of the Loyal Order of Moose, called on to produce certain books, papers, and records of that department on the theory that they were the property of the Loyal Order of Moose, a corporation, and that he, as secretary of the propagation department thereof, was a corporate officer, and as such had custody of the books of his department.

The defendant Miller was first called to the stand in the Davis trial on September 21, 1932, as a government witness. When directed to produce the books, records, and papers called for by the subpœna, he refused to do so, claiming that they were his personal property and that they would tend to incriminate him. Judge Coleman at that time sustained Miller's position and allowed him to leave the witness stand.

After the trial had proceeded further and the testimony had been more fully developed, Miller was recalled by the government and again asked to produce the books, papers, and records in respect of which he had pleaded his privilege.

Miller again invoked his privilege, but, in view of the evidence developed since he was first called, Judge Coleman overruled his objection and forced him to produce the books, records, and papers which had been subpœnaed, and they were, accordingly, marked in evidence at the Davis trial, and Miller was compelled to give testimony thereat in regard to them; and also in regard to a contract entered into between himself and the defendant McGuire as to which he had also invoked his constitutional privilege.

IV. The first point to be decided is whether Judge Coleman's ruling made in the Davis case as to the defendant Miller and the books, papers, and records produced by him constitutes the law of the case which must be followed in the contemplated joint trial of the defendants Davis, Walsh, and Miller, of which this motion is a preliminary.

■ The government contends that this question is res adjudicata as between the defendant Miller and the United States because Miller's claim of privilege is personal and has been ruled in favor of the United States. I do not think this is the proper description of the juridical effect of what Judge Coleman did, for the doctrine of res adjudicata applies only after the entry of the judgment, Reed v. Proprietors of Locks & Canals at Merrimac River, 8 How. 274, 290, 291, 12 L. Ed. 1077; Smith v. McCool, 16 Wall. 560, 561, 21 L. Ed. 324; King v. Chase, 15 N. H. 14, 41 Am. Dec. 675; Lorillard v. Clyde, 99 N. Y. 196, 200, 1 N. E. 614; Springer v. Bien et al., 128 N. Y. 98, 102, 27 N. E. 1076; and there was not any judgment as a result of the Davis trial.

■ It seems to me that the true doctrine to apply here is what is called the doctrine of the law of the case. This doctrine applies only within the four corners of a particular litigation, and, consequently, falls into an entirely different category from the doctrine of res adjudicata under which the parties or their privies in a case are foreclosed by a judgment in another and wholly separate cause.

[3] The doctrine of the law of the case is based on orderly procedure and convenience. It has high sanction and may fairly be described as the rule which requires a judge in a pending litigation to follow the interlocutory decision of a co-ordinate judge in that litigation on the same, or substantially the same, facts. Cf. Commercial Union of America v. Anglo-South American Bank, 10 F. (2d) 937, 938 (C. C. A. 2); Western Union Telegraph Company v. City of Toledo, 121 F. 734, 736 (C. C. A. 6); Stoll v. Loving, 120 F. 805, 806 (C. C. A. 6).

It is, of course, an old saying that circumstances alter cases. For that well-known reason the doctrine of the law of the case has to be confined to the application of a legal principle to the same, or substantially the same, state of facts. If the facts are substantially changed by an appropriate judicial procedure, as, for example, by a new trial, or, in the present instance, by the evidence adduced before me on the present motion, the doctrine of the law of the case is not to be enforced, cf. Patterson v. Stroecker, 245 F. 732, 734, 735 (C. C. A. 9); Crotty v. Chicago Great Western Railway (C. C. A.) 169 F. 593, 596, 597; Balch v. Haas, 73 F. 974, 978 (C. C. A. 8); for, if it were enforced on such a substantially new pattern of facts, absurd results might often follow.

V. The present motion is based on an order granted to Miller by Judge Coleman ordering that the United States attorney show cause why all the testimony heretofore given in the Davis trial by the defendant Miller and any and all books, records, papers, and other property produced by him at the court's direction and marked in evidence in that trial should not be suppressed and returned to him.

At the hearing on this order to show cause, it was agreed by the parties on the record that, in addition to the affidavits on which the motion was based, I should be deemed to have before me on that motion all pertinent portions of the testimony at the Davis trial. Also at the hearing on the motion there were witnesses examined orally on behalf of the defendant Miller.

If the result of the evidence before me, including the affidavits on the motion, is substantially to change the evidence which was before Judge Coleman, it is for me to determine as res nova whether the defendant should be allowed his privilege. Otherwise I must be bound by Judge Coleman's ruling as the law of this case because the question involved before him was a question between Miller and the government as to Miller's right to claim his constitutional privilege against self-incrimination.

VI. The evidence which was before Judge Coleman may be fairly and briefly thus summarized:

The Loyal Order of Moose is a corporation having its principal place of business at Mooseheart, Ill., where it operates a children's home and school. To maintain this charity it is necessary that it should be constantly engaged in raising money.

The defendant Davis is the director general—the highest officer of the Loyal Order of Moose—and is given by the by-laws of the corporation general advisory and supervisory powers over all the activities of the order everywhere. He is also ex officio a member of every board or committee of the corporation.

In August, 1929, Davis stated that a department should be organized to supervise the activities of the various subordinate lodges of the order in raising funds. In the official magazine of the corporation known as the "Moose Magazine" which is sent out with the approval of Davis it was announced in July, 1930, that a new department of the order, namely, the propagation department, had been created, and that defendant Miller was secretary thereof.

During the years 1930 and 1931 lotteries were conducted throughout the membership of the order, stated to be for the purpose of raising money for Mooseheart, and these lotteries were managed in the name of the propagation department of the Loyal Order of Moose by the defendant, who signed correspondence as secretary of that department.

The government has produced and exhibited letters, with the corporate seal affixed, written to banks by the supreme secretary of the order, authorizing certain individuals, including Miller, to draw upon accounts of the propagation department of the Loyal Order of Moose and also a letter to the American Railway Express authorizing one McMahon, on behalf of the propagation department, to enter into a contract by which the Loyal Order of Moose stated that it agreed to be bound.

The government also emphasizes the fact that the Supreme Lodge of the Loyal Order of Moose profited to a very large extent from the activities of the propagation department, and that the net profits of the activities were shared, one-third by the Supreme Lodge for the benefit of Mooseheart, one-third by McGuire, the professional promoter, and the remaining third was divided among the officers of the corporation, including defendants Davis and Miller.

VII. The defendant Miller claims that it is inconsistent for the government to admit as it does that the organization department of the Loyal Order of Moose is not a part of the corporation, while at the same time it claims that the propagation department is a part of that order. It is claimed that the government has thus created a precedent for

the defendant Miller's position on this motion.

I do not agree in the least with this argument. The reason why the government agreed that the organization department was not a part of the corporate organization of the Loyal Order of Moose is that it was affirmatively shown that the defendant Davis had a contract with the corporation by which he was allowed to do business under the name of the organization department of the order and share in its profits. On the other hand, in the case of Miller there is not any proof of such a contract between him and the order allowing him to call himself the propagation department thereof.

Inasmuch as Miller does not produce any contract between himself and the corporation, which would put him into the status in which Mr. Davis is definitely put by his contract with the corporation, and inasmuch as the additional evidence which Miller produced at the hearing before me was purely negative evidence, he has not proved anything new since the Davis trial about the pivotal question here, to wit, whether the books and papers now sought to be suppressed are his own privileged papers or are corporate records, and hence not subject to privilege.

The evidence of Anderson, the auditor, that he had had access to all the records of the Supreme Lodge of the Loyal Order of Moose that he had requested to see, that he had never seen any books in the propagation department, or been told thereof, or knew of it directly or indirectly, and had not found any mention of it in any of the minutes, might just as well mean that the propagation department was created, without corporate action of the directors, by the defendant Davis operating under his plenary powers as director general, as that the propagation department was a separate organization outside of the corporation. The same is true of the evidence of William Anderson, the member of the Supreme Council who was examined before me, and of all the other evidence taken before me. All of it was entirely negative.

■ I am satisfied, therefore, that the evidence before me is not so materially or substantially different from the evidence which Judge Coleman had before him as to take the situation before me out of the doctrine of the law of the case which I have mentioned above.

Consequently, orderly procedure requires that I should hold myself bound on this motion by what Judge Coleman did, and that I

should, therefore, overrule the defendant Miller's claim of privilege, and deny this motion.

VIII. This brings me to my second point.

If, owing to the fact that the Davis trial before Judge Coleman was abortive, everything that there occurred must be regarded as inconclusive and without juridical effect, and I have to deal with the matter as a new question on the record before me, which consists of the evidence from the first trial which was stipulated before me, the affidavits and the evidence which I heard in open court, I am involved in determining afresh a preliminary question of fact as to the admissibility of evidence; and I must decide first to what extent that preliminary question of fact is proved.

On this point, I hold that, while it has not been proved beyond a reasonable doubt that the books records, and papers which the defendant Miller now seeks to suppress were corporate books, records, and papers, and hence not within the privilege which he claims, I do hold that this fact is proved by a preponderance of the evidence.

The next point here involved is whether such degree of proof is sufficient to make such books, records, and papers admissible in a criminal case.

■ Such a preliminary question of fact as to the admissibility of evidence has to be decided by the judge, Gila Valley Railway Company v. Hall, 232 U. S. 94, 103, 34 S. Ct. 229, 58 L. Ed. 521, and, even when it arises in a criminal case, is not, according to the best considered authorities, subject to the requirement of proof beyond a reasonable doubt, Commonwealth v. Robinson, 146 Mass. 571, 581, 16 N. E. 452, Wigmore on Evidence, (2d Ed.) § 2550; and for an excellent discussion of the whole question see "Preliminary Questions of Fact in Determining the Admissibility of Evidence, by John MacArthur Maguire and Charles S. S. Epstein, 40 Harvard Law Review, 392.

Commonwealth v. Robinson, 146 Mass. 571, 16 N. E. 452, was an appeal from a conviction of murder, and, in dealing with the question as to the weight of the evidence on preliminary facts necessary to be proved before the admission of certain evidence before the jury, Mr. Justice Charles Allen said, at page 581 of 146 Mass., 16 N. E. 452, 456 (italics mine): "But where, in a case like the present, the admissibility of testimony depends upon the determination of some prior fact by the court, there is no rule of law that,

in order to render the testimony admissible, such prior fact must be established by a weight of evidence which will amount to a demonstration, and shut out all doubt or question of its existence. *It is only necessary that there should be so much evidence as to make it proper to submit the whole evidence to the jury.* The fact of the admission of the evidence by the judge does not in a legal sense give it any greater weight with the jury. It does not affect the burden of proof, or change the duty of the jury in weighing the whole evidence. They must still be satisfied, in a criminal case, upon the whole evidence, beyond a reasonable doubt."

IX. Accordingly I find that the papers which the defendant Miller seeks now to suppress are corporate records of the Supreme Lodge of the Loyal Order of Moose, and as such not within the privilege which the defendant Miller claims, that, consequently, they may be used by the government in the joint trial of the remaining three defendants, and that the present motion must fail.

Settle order on notice.