**UNITED STATES of America**

v.

**Hyman Harvey KLEIN, Isidor J. Klein, Albert McLennan, George Norgan, Ellis Rosenberg, Maurice Haas, Irving A. Koerner, Morris O. Alprin and Albert Roer, Defendants.**

United States District Court.
S. D. New York.
April 18, 1955.

J. Edward Lumbard, U. S. Atty., New York City, by Arnold Bauman, Harold R. Tyler, Jr., Asst. U. S. Attys., Joseph De Franco, John J. Donahue, New York City, Martin Carmichael, Jr., Asst. U. S. Atty., West Palm Beach, Fla., and Arthur Brooks, Asst. U. S. Atty., New York City, James Riordan, Atty., Department of Justice, Washington, D. C., for the Government.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, Theodore A. Kiendl, William Meagher, John Reed, New York City, Fred Horowitz, Los Angeles, Cal., of counsel, for defendant Hyman Harvey Klein.

Louis Bender, New York City, for defendant Maurice Haas.

F. Joseph Donohue, Washington, D. C., Michael Kaminsky, New York City, Abraham S. Goldstein, Washington, D. C., of counsel, for defendant Morris O. Alprin.

Samuel Becker, New York City, John H. Norris, David Stock, New York City, of counsel, for defendant Irving A. Koerner.

Greenman, Shea, Sandomire & Zimet, Barr & Barr, New York City, Frederick F. Greenman, Robert H. Haines, New York City, of counsel, for defendant Albert Roer.

SUGARMAN, District Judge.

On May 13, 1954 the Grand Jury indicted nine defendants. The First Count charges all nine with having attempted to evade the 1944 income tax of one of the defendants; the Second Count charges all nine with having attempted to evade the 1945 income tax of said one defendant; the Third Count charges all nine with having attempted to evade the 1946 income tax of said one defendant; the Fourth Count charges all nine with having conspired to evade the 1944, 1945 and 1946 income tax of four of the defendants; and the Fifth Count charges seven of the defendants with conspiring to defraud the United States in the exercise of its governmental function of collecting and assessing income taxes by concealing the 1945, 1946 and 1947 net income of three of the defendants named in the first four counts, one of whom is not named in the Fifth Count as a defendant.

On September 17, 1954 another indictment was filed against the said nine defendants which substantially repeated the fourth and fifth counts of the indictment filed on May 13, 1954.

One of the nine defendants having died and three of them being without the United States, the remaining five came to trial on April 4, 1955.

At the opening of the trial the United States moved to sever the Fourth and Fifth Counts of the indictment filed May 13, 1954 and to consolidate that indictment with the subsequent indictment filed September 17, 1954. The defendants having consented thereto, there resulted a consolidated indictment containing as the first three counts thereof the first three counts of the indictment of May 13, 1954 and as the Fourth and Fifth Counts thereof the two counts of the indictment of September 17, 1954, upon which consolidated indictment the trial proceeded.

Under the Fourth Count of the consolidated indictment, it was stated

"3. It was further a part of said conspiracy that the defendants would file with and cause to be approved by the Office of Price Administration, Washington, D. C. an application To Office of Price Administration for Maximum Prices on Imported Case Goods, in the name of

R. C. Williams & Co., Inc.
10th Avenue
25th to 26th Streets
New York, New York

in which it was alleged that the Cost Per Case Contract Price of Harwood's a Blended Canadian Whiskey was $19.05 which price was in excess, of the legal maximum price for said whiskey."

At a pre-trial conference the United States Attorney agreed that in his opening to the jury he would make reference to the issuance by the OPA of the said order to R. C. Williams & Co., Inc., only by stating that it had been issued in that amount. The trial proceeded to a point where the Government sought to elicit from a witness on the stand testimony leading to the excessiveness of the price allowed in said OPA order above the legal maximum price for said whiskey. At that point the defendants interposed an objection to any testimony in the trial dealing with the propriety of the price fixed in the OPA order and how it was obtained.

Prior to the trial herein and on October 1, 1954, one of my brethren decided a series of motions addressed to the first indictment by all five defendants now on trial. Among those motions was one to strike out the reference above quoted from the Fourth Count of the indictment. That motion was denied, 124 F.Supp. 476, at page 479, the decision disposing of same stating,

"Defendants' motions under Rule 7(d) of the Federal Rules of Criminal Procedure [18 U.S.C.A.], to strike as prejudicial surplusage certain allegations and overt acts under the Fourth Count of the indictment, must be denied. A motion made pursuant to this rule will be granted only where it is clear that the allegation complained of is not relevant to the charge contained in the indictment and is inflammatory and prejudicial. See United States v. New York Great Atlantic & Pacific Tea Company, 5 Cir.,1943, 137 F.2d 459. In the instant case the allegations concerning Office of Price Administration controversies in which the defendants were previously involved are relevant because the Government charges that the defendants were engaged in manipulating OPA regulations for the purpose of perpetrating the criminal tax violations charged in the indictment."

At the outset it must be determined whether this pronouncement by my colleague is the law of the case binding upon me in determining the defendants' objection and motion to exclude any testimony during the trial with respect to the alleged illegality of the defendants, or any of them, having obtained an OPA price in excess of the legal maximum.

I believe that I am free to determine this application untrammeled by my colleague's aforesaid ruling and he agrees. On this score, it was said in this district [1]

"The doctrine of the law of the case is based on orderly procedure and convenience. It has high sanction and may fairly be described as the rule which requires a judge in a pending litigation to follow the interlocutory decision of a co-ordinate judge in that litigation on the same, or substantially the same, facts. (Cases cited.)

"It is, of course, an old saying that circumstances alter cases. For that well-known reason the doctrine of the law of the case has to be confined to the application of a legal principle

[1]. United States v. Davis, D.C.S.D.N.Y., 3 F.Supp. 97, 98.

to the same, or substantially the same, state of facts. If the facts are substantially changed by an appropriate judicial procedure, as, for example, by a new trial, or, in the present instance, by the evidence adduced before me on the present motion, the doctrine of the law of the case is not to be enforced (cases cited) for, if it were enforced on such a substantially new pattern of facts, absurd results might often follow."

The determination on the motion to strike the third paragraph of the Fourth Count of the indictment was addressed only to that relief and was predicated on affidavits alone. That ruling, in that context, does not restrict a later ruling by the trial judge upon the admissibility of evidence during a trial before a jury.

The problem here posed is not easily solved. It involves the discriminate weighing of the relevancy of the collateral charge against the prejudice if any that the admission of the disputed testimony may visit upon the defendants. Many decisions have been written which have, in the main, obscured rather than clarified the applicable test. The resultant seeming conflict is in part attributable to the dissimilarity of precise facts between the cases although it has been said that the judicial personality also plays a leading role in the end result.[2]

After confessing that "it is hopeless to attempt to reconcile the precedents under the various heads" Dean Wigmore observes

" * * * far too much depends on the tendency of the Court in dealing with a flexible principle. One Court will be certain to exclude everything that is not too clearly probative for even technical quibblers to oppose, and sometimes will exclude even that. Another Court will accept whatever has real proba-

tive value. Something, however, may perhaps be gained by realizing as to the former, that it is not the law, nor precedent, nor principle, nor policy, that will account for such rulings, but merely a rooted inclination to take the stricter view and a preference to err in favor of criminals and against innocent victims."

Dean Wigmore's assessment of responsibility, while it has not gone unchallenged,[3] has had the salutary effect of cautioning judges to approach the problem without maudlin sympathy for defendants. It is in that frame that the instant objection and motion are appraised.

From the abundance of cases treating with the subject a classic statement of the test to be applied is that of Judge Learned Hand:[4]

"In short, that if evidence is relevant to prove one crime, it does not become inadmissible because it also proves another. Such is indeed the law; yet, here as always, the competence of evidence in the end depends whether it is likely, all things considered, to advance the search for truth; and that does not inevitably follow from the fact that it is rationally relevant. As has been said over and over again, the question is always whether what it will contribute rationally to a solution is more than matched by its possibilities of confusion and surprise, by the length of time and the expense it will involve, and by the chance that it will divert the jury from the facts which should control their verdict."

■■ The first axiom of admissibility is that none but facts having rational probative value are admissible.[5] Thus a fact to be admissible must be agreeable to reason and intelligence and be sensible and must serve to prove the charge levelled against the defendants.

2. I Wigmore, Evidence (2d ed. 1923), 616.

3. 51 Harvard Law Rev. 988.

4. United States v. Krulewitch, 2 Cir., 145 F.2d 76, at page 80, 156 A.L.R. 337.

5. Wigmore's Code of Evidence, 3d Ed., Rule 11.

It is difficult to see how the fact that if these defendants, or one or some of them, fraudulently procured an order from the OPA, allowing them to charge in excess of the ceiling price for the whiskey here involved, that fact can in any wise serve to prove that these defendants collaborated in the filing of a false income tax return by one of them and conspired to evade the income taxes of a number of them.

To permit the Government to embark upon the proposed "trial within a trial" would work irreparable harm to the defendants, even if that testimony were relevant to the charge upon which they now stand trial. It is bad enough that they stand before the bar of justice charged with being tax evaders and conspirators. To permit them to be painted before the jury as war profiteers and ceiling price violators to boot, when the latter charge is, if at all, only remotely connected with the charge upon which they now stand trial, would result only in inflaming the jury against them. Furthermore, the suggested OPA violation occurred over a decade ago and the defendants now find themselves shorn of the proof to fairly resist this subordinate charge.

It is beyond cavil that the alleged OPA misdeeds have not the remotest connection with the First, Second, Third and Fifth Counts of the indictment and are not even mentioned therein. As to the Fourth Count of the indictment, wherein mention is made thereof, it appears clear that whatever this proof may contribute rationally to a solution of the crime charged is by far outweighed by the confusion, length of time and expense that its injection will involve, and the clear chance that it will confuse, divert and, in all probability, incense and enrage the jury against these defendants and deprive them of a fair trial on the charges contained in the indictment.

The Government has offered a prolixity of cases as authority for its argument that the defendants' objections and motions be rejected. Nothing contained therein persuades a contrary conclusion to that above announced. To treat with every case cited would make this ruling needlessly verbose. Some however will be considered and quoted to indicate that they are not at loggerheads with this ruling.

In Weiss v. United States, 5 Cir., 122 F.2d 675, at page 682, the rule is quoted from Greenleaf on Evidence, Vol. 1, pp. 68–70, as follows:

" 'In some cases, however, evidence has been received of facts which happened before or after the principal transaction, and which had no direct or apparent connection with it; and therefore their admission might seem, at first view, to constitute an exception to this rule. But those will be found to have been cases, in which the *knowledge* or *intent* of the party was a material fact, on which the evidence, apparently collateral, and foreign to the main subject, had a direct bearing, and was therefore admitted. * * * Cases of this sort, therefore, instead of being exceptions to the rule, fall strictly within it.' "

It is indeed difficult to discern any direct bearing that the alleged OPA violation at bar might have upon the defendants' knowledge or intent to evade their income taxes.

In Bracey v. United States, 79 U.S. App.D.C. 23, 142 F.2d 85, at page 88, it was said:

"Thus, evidence of other criminal acts has been held admissible by this court when they are so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged. Such evidence is admissible if it is so related to or connected with the crime charged as to establish a common scheme or purpose so associated that proof of one tends to prove the other, or if both are connected with a single purpose and in pursuance of a single object;

as well as to establish identity, guilty knowledge, intent and motive."

Again, it is difficult to see how the alleged OPA violation is blended or connected with the crime charged in the indictment, or is involved therein, explains the circumstances thereof, or tends to prove any element thereof. It is not related to or connected with the crime charged so as to establish a common scheme or purpose on the part of the defendants. It is extremely difficult, if not impossible, to find any connection between the alleged violation of the OPA regulations and the later alleged violation of the Internal Revenue Law, 26 U.S.C.A. § 1 et seq.

In Harris v. United States, 2 Cir., 273 F. 785, at page 791, Judge Rogers wrote:

"And we understand the rule to be that, if intent or motive be one of the elements of the crime charged, evidence of other like conduct by the defendant at or near the time charged is admissible. * * * "

It cannot be accepted that an alleged violation of OPA regulations in 1944 is like conduct by the defendants, at or near the time charged, to an alleged evasion of the Internal Revenue Laws in 1948.

In Wood v. United States, 16 Pet. 342, 346, 41 U.S. 342, 346, 10 L.Ed. 987, a case involving the forfeiture of goods for customs fraud

"counsel of the claimant objected to the admissibility in evidence of the invoices of the other goods imported by the claimants * * * before and after the importation of the goods in question * * *."

Justice Story in sustaining the admissibility of that proof said, 16 Pet. at page 358:

"The question was one of fraudulent intent or not; and upon questions of that sort, where the intent of the party is matter in issue, it has always been deemed allowable, as well in criminal as in civil cases, to introduce evidence of other acts and doings of the party of a kindred character, in order to illustrate or

establish his intent, or motive in the particular act, directly in judgment. Indeed, in no other way would it be practicable, in many cases, to establish such intent or motive, for the single act taken by itself may not be decisive either way; but when taken in connection with others of the like character and nature, the intent and motive may be demonstrated almost with a conclusive certainty * * * ".

The foregoing rule is certainly no authority for the proposition that an alleged fraud under OPA regulations is in any wise indicative of an alleged fraudulent intent to violate the Internal Revenue Laws.

In United States v. Herskovitz, 2 Cir., 209 F.2d 881, at page 885, Judge Medina stated:

"The substantive counts all referred to the 1949 income tax returns, prepared in early 1950. Some of the challenged testimony, however, dealt also with 1947 and 1948 income tax returns, and included evidence with respect to these returns as well as conversations between each of the appellants and taxpayers during interviews in preparation of these returns. * * *

"This evidence established a consistent pattern of criminal conduct relevant on the issue of appellants' guilty knowledge, intent and purpose. * * * "

What was presented in the Herskovitz case is readily distinguishable from the facts at bar and that case is obviously no authority for the proposition that an alleged fraud in an application to the OPA establishes a consistent pattern of criminal conduct relevant on the issue of the defendants' guilty knowledge, intent and purpose in their alleged violation of the Internal Revenue Laws.

In Williamson v. United States, 207 U.S. 425, at page 451, 28 S.Ct. 163, at page 172, 52 L.Ed. 278, Mr. Justice White, in quoting from Holmes v. Goldsmith, 147 U.S. 150, 164, 13 S.Ct. 288, 37 L.Ed. 118, said:

" 'As has been frequently said, great latitude is allowed in the reception of circumstantial evidence, the aid of which is constantly required, and therefore, where direct evidence of the fact is wanting, the more the jury can see of the surrounding facts and circumstances the more correct their judgment is likely to be. * * * ' "

In the case at bar there is no lack of direct evidence of the amount of earnings for the years 1944, 1945 and 1946 of the corporations claimed to be the alter ego of some of these defendants and the amount of tax paid and due thereon. Proof of a prior alleged violation of OPA regulations supplies nothing thereto. Justice White continues in his quotation from the Holmes case—

" 'Courts of error are specially unwilling to reverse cases because unimportant and possibly irrelevant testimony may have crept in, unless there is reason to think that practical injustice has been thereby caused.' "

As above first indicated, the "creeping in" of the irrelevant testimony regarding the alleged OPA violation would most certainly work a practical injustice upon these defendants.

The Government cites United States v. Lovely, D.C.E.D.S.C., 77 F.Supp. 619, in support of its position herein. Defendants' counsel either ignore or try to distinguish that decision. Attention is invited to the fact that that holding was reversed in Lovely v. United States, 4 Cir., 169 F.2d 386. In that reversal Judge Parker stated, at page 388,

"We think there can be no question but that the admission of this testimony was reversible error."

Judge Parker continued, at page 389

"The rule which thus forbids the introduction of evidence of other offenses having no reasonable tendency to prove the crime charged, except in so far as they may establish a criminal tendency on the part of the accused, is not a mere technical rule of law. It arises out of the fundamental demand for justice and fairness which lies at the basis of our jurisprudence. If such evidence were allowed, not only would the time of courts be wasted in the trial of collateral issues, but persons accused of crime would be greatly prejudiced before juries and would be otherwise embarrassed in presenting their defenses on the issues really on trial."

Paraphrasing other of Judge Parker's language in the Lovely case, it might be said of the instant case that "In the case at bar, for instance, not only would the trial be prolonged by controversies foreign to the issue before the jury, but the accused would be called upon to defend a charge of violating OPA regulations, while their hands are full defending the charge contained in the indictment, and the jury would necessarily be given the impression, although the defendants' character is not placed in issue, that they are bad men who have been guilty of other crimes and who might well be convicted on that account." Judge Parker then quotes at length from People v. Molineux, 168 N.Y. 264, 61 N.E. 286, 62 L.R.A. 193, upon which the government also relies herein, but which case does not sustain the view urged by the government herein.

Pereira v. United States, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435, does not support the government's statement in its brief that in that case "the Government was entitled to show other occasions on which their victim, a wealthy widow, was defrauded of $5,000, a Cadillac car, and 'the change' from the purchase of the Cadillac." While these facts were mentioned by Chief Justice Warren in his recital of the proof at the trial, the introduction of this testimony in the court below was not the point upon which the affirmance by the Supreme Court turned. Thus, Pereira is not the authority claimed for it.

In United States v. Pleva, 2 Cir., 66 F.2d 529, the defendants, inspectors of election, charged with a conspiracy to

falsely record votes cast for federal offices in an election, claimed error in admission of testimony as to conditions prevailing in the polling place before and during the tally. After confessing difficulty in perceiving in what manner the admission of this testimony could have harmed the appellants, Judge Chase observed, at page 531, that

" * * * what was done at the polls just previous to and during the taking of the tally was so closely related to the offense charged that it was admissible to show that all was part of a common plan designed, and carried out to injure and oppress voters as alleged."

This is indeed a far cry from the remote relationship in the case at bar between the alleged OPA infractions in 1944 and the alleged tax evasion in 1948.

With respect to the cases cited by the Government in support of the contention that the alleged OPA violation "is admissible as directly probative of an essential element of the government's case", i. e., "the source of the defendants' income", suffice it to repeat that there is little dispute in the case at bar as to the source and amount of the income here involved and that it would be highly prejudicial to inject on the basis urged inflammatory testimony of a violation of OPA regulations. From the government's bill of particulars herein, it is obvious that this is not a net worth case, and that there is little dispute as to the source and amount involved. While it might be necessary, in a situation where a taxpayer has failed to keep the records required by law, for the government, in establishing a starting figure in a net worth and expenditure prosecution for tax evasion, to expose the sources of a defendant's illegal gains, that necessity is completely lacking in the case at bar. Thus Kobey v. United States, 9 Cir., 208 F.2d 583, United States v. Chapman, 7 Cir., 168 F.2d 997, United States v. Commerford, 2 Cir., 64 F.2d 28, and Leeby v. United States, 8 Cir., 192 F.2d 331, are inapposite.

In the Leeby case Chief Judge Gardner stated at page 333,

"In estimating defendant's income on the receipts and disbursements basis, or on the net worth basis, the witness considered the question of his income or want of income prior to 1944 and we think the testimony was admissible for that purpose and the court carefully limited it to that purpose."

True, in the Leeby case it was held not to have constituted reversible error for the trial court to have permitted reference in the testimony to the fact that the defendant had been fined for violation of OPA regulations. The propriety thereof in that case, stems from the necessity of the amount of fines and bonds deposited by the defendant in connection with those OPA violations, being taken into account in determining his net worth statement and his receipts and disbursements statement. Even there, however, the 8th Circuit Court of Appeals, at least by implication, questioned the receipt of that testimony even for the limited purpose, when it said, quoting its earlier decision in Diehl v. United States, 8 Cir., 98 F.2d 545, 548,

"Even though the evidence complained of was incompetent, its admission, over the objection made to it, would not justify reversal in this case, where there was an abundance of competent evidence to sustain the verdict of the jury and the trial was in all other respects fair and impartial."

It cannot serve as a foundation for admitting incompetent evidence, to anticipate that there will be sufficient other competent evidence, to justify a conviction if one eventuates in this matter.

In Malone v. United States, 7 Cir., 94 F.2d 281, the defendant, a State Tax Commissioner in Illinois, was convicted for federal income tax evasion. In sustaining admission of testimony of income for years prior to those for which defendant was convicted Judge Major observed at page 287,

"The fact that the final assessments against corporations from whom this money was received, were decreased, in connection with the circumstances under which the defendant received the money, was sufficient to justify a jury in believing the same was received by the defendant as bribes, and that at least a sizable portion of the currency deposits came from such a source and constituted a part of defendant's income. The evidence that defendant's net worth during the years in question was increased in an amount somewhat similar to the amount of the currency deposits is not without significance."

Here again the disputed proof was allowed merely to establish the amount of income, a reason completely absent in the case at bar.

No gainful purpose can be served by further analyzing in detail the cases offered by the government in support of various additional propositions in its brief. In view of what has already been said, it will be sufficient to but mention those general propositions and state in what way they are inapplicable to the facts at bar.

It is urged that the alleged "fraud upon the Office of Price Administration is closely interwoven with proof of the offense alleged in Count Four and therefore is admissible." In each of the cases cited in support,[6] the collateral proof was so interwoven with the charge in the indictment as to be virtually inseparable, although it is to be noted that Judge Frank's dissent in the Rubenstein case takes issue with the admissibility of proof tending to show the crime of subornation of perjury in a divorce proceeding, in the prosecution of an indictment for conspiracy to defraud the United States by obtaining the entry of an alien by false representation. And, in the Vause case Judge Chase stated at page 355,

"To be sure, evidence which has little or no bearing on the charge against an accused is not admitted when it shows guilt of an independent crime, * * * nor is evidence of the commission of one crime generally relevant to prove guilt of another * * * but evidence which directly tends to prove an issue material in a prosecution is not made inadmissible simply because it indicates in some way that a defendant has been accused of another offense."

That statement teaches that the evidence, in order to be admissible, must have a direct tendency to prove an issue material in the prosecution. It is indeed difficult to see how proof of a violation of OPA regulations directly tends to prove any material issue in a prosecution for evasion or conspiracy to evade the Internal Revenue Laws.

Another point upon which only brief reference will be made to some of the cited cases is that urged by the government to the effect that "evidence of a prior similar act, to wit, another fraud upon the government, is relevant proof of the fraudulent intent of the defendants in this case."

In United States v. Brand, 2 Cir., 79 F.2d 605, the defendant Brand, convicted of having transported a stolen car in interstate commerce and conspiring to do so, objected to the receipt of evidence of his having previously sold another stolen car, in the absence of proof that he knew the other car to have been stolen. On the question of scienter, Judge Learned Hand said at page 606,

"Nor can we see any basis for distinguishing between knowledge and intent in such cases. The judge must decide each time whether the other instance or instances form a basis for sound inference as to the guilty knowledge of the accused in the transaction under inquiry; that is all that can be said about the matter."

6. United States v. Rubenstein, 2 Cir., 151 F.2d 915; Vause v. United States, 2 Cir., 53 F.2d 346.

How this holding stands for authority that an alleged fraud upon the OPA is admissible, even as proof of a prior *similar* act, in a trial of an indictment charging income tax evasion is difficult to understand. At best they both involve fraud, but each of an entirely different nature and for an entirely different purpose.

United States v. Schiller, 2 Cir., 187 F.2d 572, does not hold for the aforesaid proposition ascribed to it by the government. There the defendant Schiller, while being cross-examined, admitted over objection that he had been paid sums of money by prospective tenants for procuring apartments for them while he was an attorney in the Area Rent Control Office, after his having been asked whether such payments would be in violation of the New York Penal Law, McKinney's Consol. Laws, c. 40, § 1 et seq., which latter question was excluded by the trial judge. Although Schiller had previously pleaded guilty in the state court, judgment of conviction had not yet been entered, in this context Judge Augustus N. Hand said, at page 574,

"It is claimed that the previous question brought before the jury Schiller's plea of guilty which was not a proper subject of attack where no judgment had been entered thereon. We think this argument confuses proof of conviction of crime to contradict a witness who has denied it with a general cross-examination of a witness on matters affecting his credibility. Although the government would have been bound by a response dealing only with credibility unless it had a court record of conviction to offer, the cross-examination was permissible because it dealt with disreputable or criminal acts tending to impugn Schiller's veracity. * * * His testimony that he had received commissions from prospective tenants for services which were in violation of a New York penal law prohibiting excessive charges in connection with rental agreements tended to show that he

had an intention to use his office in disregard of the rental control regulations in situations like the case at bar."

The similarity of offenses in the Schiller case is not at all comparable to the dissimilarity of the alleged offenses in the case at bar, i. e., OPA violation as against income tax evasion. It is worth repeating that they shared but one common element—fraud—but to different agencies, at different times, for different purposes and with different results.

It might at this point be parenthetically observed that the dissimilarity between the alleged charges in the case at bar is emphasized by Himmelfarb v. United States (Ormont v. United States), 9 Cir., 175 F.2d 924, at page 935 certiorari denied 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed 527, where Judge Stephens observed

"We have very carefully reviewed the evidence given by Ormont before the Grand Jury. It has no relation to income tax matters and was elicited in an attempt by the Grand Jury to find whether or not Ormont had been charging illegal sums for slaughtering animals. How or in what manner this inquiry was related to the charge in the instant case is not divulged in the record or in appellant's briefs except as follows which we quote from the brief: 'The evidence given by Mr. Ormont before the Grand Jury not only affected the matter of sales of meat, but the testimony with regard to payment of extra charges for slaughtering which would, of necessity, affect his income and his testimony as to the invoices or such matters and recording of such charges on his books, if such charges were in violation of OPA regulations, and, presumably, they were, else King and Southern California Meat Company would not have entered pleas of guilty to the indictment, such extra charges might not be a proper reduction of his income.' The evidence referred to is that Ormont

paid $1.00 per head for slaughtering a beef and sometimes extra services amounted to as high as $3.00. *This evidence is a far cry from revealing anything as to Ormont's income tax."* (Emphasis supplied.)

It would seem indisputable from that language that a wide gap exists between the charge of OPA violation and that of income tax evasion.

Little persuasion is necessary to satisfy one that Nye & Nissen v. United States, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919, adds no nourishment to the government's position herein. As Justice Douglas observed at page 618 of 336 U.S., at page 769 of 69 S.Ct.

"It is argued in the second place that the trial court erred in admitting against Moncharsh evidence of crime similar to those charged in the substantive counts to prove the guilty intent with which the substantive acts were committed. Each of the six substantive counts charged the presentation of a separate false invoice. The evidence showed the presentation of eleven other false invoices. This was part of the evidence received in support of the conspiracy count. The trial court also admitted it at the conclusion of the case 'for the sole purpose of proving guilty intent, motive, or guilty knowledge' of the defendants. Evidence that similar and related offenses were committed in this period tended to show a consistent pattern of conduct highly relevant to the issue of intent."

It has been demonstrated that in the case at bar we are not dealing with evidence of similar or related offenses tending to show a consistent pattern of conduct; we are dealing with one alleged fraud in procuring an OPA order in 1944 and another alleged fraud in reporting income tax in 1948.

Sufficient has been said to warrant summary rejection of the additional point urged by the government, to wit, that

evidence of the OPA infraction "is admissible as affording a further motive for the concealment efforts involved in the tax evasion". The cases cited in support of this proposition fall so far short of their mark as to require no discussion except to observe generally that the alleged OPA infractions would neither "throw light upon", "prove motive" for nor "explain the conduct of" the defendants in their alleged income tax evasions or concealments.

Sufficient has also been said to warrant summary rejection of the additional point urged by the government that "this evidence is admissible with respect to the conspiracy count because it shows the relationship of the parties at the time of the conspiracy and gives a further insight into its methods." There is no dispute as to the relationship of the parties nor as to the manner in which the defendants operated. The government says that method is criminal, the defendants deny it. Whatever occurred at OPA cannot add to or detract from the facts.

Adequate treatment having been hereinabove accorded the government's additional points that "this evidence should not be excluded on the ground of prejudice" and "this evidence should not be excluded on the ground that it is dissimilar from the fraudulent acts for which the defendants are on trial", no further discussion thereon will be indulged in.

The government's supplemental memorandum has been carefully read. It offers nothing to alter the court's opinion that the evidence proffered by the government of independent OPA violation is inadmissible in this trial for income tax evasion and concealment and conspiracy to commit the same.

By way of summary, attention is directed to 20 American Jurisprudence Sec. 310 where it is said

"It is not to be inferred from the rule stated above regarding the inadmissibility of proof of other crimes or offenses that the admis-

**818**

sion of evidence which shows or attempts to show the commission of an offense other than the particular one with which the accused is charged must be excluded in all cases and under all circumstances. There are, on the contrary, several well-recognized exceptions to and limitations upon the general rule stated. Evidence of other crimes is always admissible when such evidence tends directly to establish the particular crime, and it is usually competent to prove the motive, the intent, the absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others, or the identity of the person charged with the commission of the crime on trial. When the fact of a former crime is an element in the offense charged, evidence of it is admitted * * *."

By the standard thus enunciated it is now held that the alleged violation of OPA regulations and testimony or proof thereof is inadmissible in the trial of the instant indictment. This court is satisfied that to admit such proof would tend to create hostility and a confusion of issues that would far outweigh its probative value. As was said in Boyer v. United States, 76 U.S.App.D.C. 397, 132 F.2d 12, 13, quoting 29 Michigan Law Review 473 at 480, "the law seeks 'a convenient balance between the necessity of obtaining proof and the danger of unfair prejudice.' * * *" That danger is clearly manifest in the case at bar and the proffered evidence will be excluded.

"Upon all the foregoing, the objection of the defendant Koerner to the question addressed to the witness Jacobs on page 307 of the stenographer's minutes is sustained and the answer thereto on page 308 is stricken. Said objection made by the defendant Koerner at page 309 of the stenographer's minutes is sustained and this ruling inures to the benefit of all defendants on trial."